**GUST ROSENFELD P.L.C.**
One E. Washington, Suite 1600
Phoenix, Arizona 85004-2553
Telephone No. (602) 257-7670
Facsimile No. (602) 254-4878
Nicole S. Sandoval – 029316
nsandoval@gustlaw.com

**Attorneys for** *OneAZ Credit Union f/k/a Arizona State Credit Union*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>DANIEL JACOB PENA and TIFFANY DAWN PENA,<br><br>Debtors. | Case No. 4:16-bk-01533-BMW<br><br>Chapter 7 |

**STIPULATED MOTION TO DEEM THE REAFFIRMATION AGREEMENTS REGARDING 2005 NISSAN ARMADA AND 2013 CHEVROLET CRUZ TIMELY FILED**

OneAZ Credit Union f/k/a Arizona State Credit Union ("OneAZ"), a secured creditor, and Daniel Jacob Pena and Tiffany Dawn Pena ("Debtors") (collectively, "the Parties"), by and through their undersigned counsel, jointly move the Court to deem the Reaffirmation Agreements regarding a 2005 Nissan Armada and a 2013 Chevrolet Cruze (the "Chevrolet") executed by the Parties and Parties' counsel as timely filed, and state as follows:

1. On or about February 22, 2016, Debtors filed their Voluntary Petition for an order for relief under Chapter 7 of the Bankruptcy Code.

2. OneAZ has secured interests in Debtors' 2005 Nissan Armada, VIN 5N1AA08A65N736249 (the "Nissan") and a 2013 Chevrolet Cruze, VIN 1G1PJ5SB9D7240516 (the "Chevrolet").

3. Debtors filed a Statement of Intention indicating their desire to reaffirm the obligations securing the Nissan and Chevrolet.

4. On or about March 16, 2016, OneAZ mailed Debtors' counsel a Reaffirmation Agreement for the Nissan, which provided for the Parties' reaffirmed obligation in the amount of $7,613.81, interest of 4.20%, and monthly payments of $293.29. On the same date, OneAZ mailed Debtors' counsel a Reaffirmation Agreement for the Chevrolet, which provided for the Parties' reaffirmed obligation in the amount of $14,231.60, interest of 5.45%, and monthly payments of 269.54.

5. On August 9, 2016, Debtor Daniel Pena, contacted OneAZ to inquire why his auto loans were not being reflected on his credit report as being reaffirmed. At this time, OneAZ informed him they had not received the executed Reaffirmation Agreements.

6. On August 10, 2016, OneAZ received a call from the office of Debtors' counsel advising that the Agreements had been previously executed and returned to OneAZ. For unknown reasons, however, OneAZ did not receive the executed Reaffirmation Agreements sent by Debtors' counsel.

7. Debtors were discharged on June 8, 2016

8. In compliance with 11 U.S.C. § 521(a)(6)(A), Debtors' counsel provided OneAZ with another copy of the signed Reaffirmation Agreements, executed by Debtors and certified by Debtors' counsel. A copy of the executed Nissan Reaffirmation Agreement which has been filed contemporaneously herewith is attached as **Exhibit A**. A copy of the executed Chevrolet Reaffirmation Agreement which has been filed contemporaneously herewith is attached as **Exhibit B.**

9. The Parties and the Parties' counsel believe the Reaffirmation Agreements are in the best interest of the Parties.

For the foregoing reasons, the Parties jointly request that the Court deem the Nissan Reaffirmation Agreement and the Chevrolet Reaffirmation Agreement timely filed.

[Signatures on Following Page]

Dated this 19 day of August, 2016.

**WRIGHT LAW OFFICES**

By ______________________
Benjamin Joseph Wright
Attorney for Debtors

**GUST ROSENFELD P.L.C.**

By /s/ Nicole S. Sandoval - 029316
Nicole S. Sandoval
Attorneys for *OneAZ Credit Union f/k/a Arizona State Credit Union*

Original of the foregoing electronically filed this 19 day of August, 2016 with:

CLERK, UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA
*https://ecf.azb.uscourts.gov*

Copies of the foregoing mailed this 19 day of August, 2016 to:

Benjamin Joseph Wright
WRIGHT LAW OFFICES
1418 North Scottsdale Road, Ste. 222
Scottsdale, AZ 85257
Attorneys for *Debtors*

Trudy A. Nowak
2001 E. Campbell Ave., Suite 201
Phoenix, AZ 85016
*Chapter 7 Trustee*

United Consumer Financial Services
BASS & ASSOCIATES, P.C.
3936 E. Ft. Lowell Rd., Ste. #200
Tucson, AZ 85712
*Creditor*

By /s/ Trish Palacios

# EXHIBIT A

Fill in this information to identify your case:

Debtor 1 DANIEL J PENA
First Name Middle Name Last Name

Debtor 2 TIFFANY D PENA
(Spouse, if filing) First Name Middle Name Last Name

United States Bankruptcy Court for the: District of ARIZONA (State)

Case number (if known) 4:16-bk-01533

# Official Form 427

## Cover Sheet for Reaffirmation Agreement

12/15

**Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.**

**Part 1: Explain the Repayment Terms of the Reaffirmation Agreement**

**1. Who is the creditor?**
ARIZONA STATE CREDIT UNION
Name of the creditor

**2. How much is the debt?**
On the date that the bankruptcy case is filed $ 7,710.92
To be paid under the reaffirmation agreement $ 7,612.81
$ 293.29 per month for 28 months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**
Before the bankruptcy case was filed 4.20 %
Under the reaffirmation agreement 4.20 % ☒ Fixed rate ☐ Adjustable rate

**4. Does collateral secure the debt?**
☐ No.
☒ Yes. Describe the collateral. 2005 NISSAN ARMADA
Current market value $ 8,447.00

**5. Does the creditor assert that the debt is nondischargeable?**
☒ No.
☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from *Schedule I: Your Income* (Official Form 106I) and *Schedule J: Your Expenses* (Official Form 106J), fill in the amounts.**

| Income and expenses reported on Schedules I and J | | Income and expenses stated on the reaffirmation agreement | |
|---|---|---|---|
| 6a. Combined monthly income from line 12 of Schedule I | $ 5,264.20 | 6e. Monthly income from all sources after payroll deductions | $ 5,264.20 |
| 6b. Monthly expenses from line 22c of Schedule J | − $ 5,523.00 | 6f. Monthly expenses | − $ 5,523.00 |
| 6c. Monthly payments on all reaffirmed debts not listed on Schedule J | − $ 0 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses | − $ 0 |
| **6d. Scheduled net monthly income** Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets. | $ (258.80) | **6h. Present net monthly income** Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets. | $ (258.8) |

Debtor 1 DANIEL J PENA
First Name Middle Name Last Name
Case number (if known) 4:16-bk-01533

Debtor 2 TIFFANY D PENA
First Name Middle Name Last Name
Case number (if known) 4:16-bk-01533

| | |
|---|---|
| 7. Are the income amounts on lines 5a and 5e different? | ☒ No. <br> ☐ Yes. Explain why they are different and complete line 10. |
| 8. Are the expense amounts on lines 6b and 6f different? | ☒ No. <br> ☐ Yes. Explain why they are different and complete line 10. |
| 9. Is the net monthly income in line 6h less than 0? | ☐ No. <br> ☒ Yes. A presumption of hardship arises (unless the creditor is a credit union). Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10. <br> Creditor is a credit union |
| 10. Debtor's certification about lines 7-9 <br> If any answer on lines 7-9 is Yes, the debtor must sign here. <br> If all the answers on lines 7-9 are No, go to line 11. | I certify that each explanation on lines 7-9 is true and correct. <br> x [signature] Signature of Debtor 1 <br> x [signature] Signature of Debtor 2 (Spouse Only in a Joint Case) |
| 11. Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☐ No. <br> ☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement? <br> ☐ No. <br> ☐ Yes. |

## Part 2: Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement.*

x [signature]
Signature

Date 3/11/2016
MM / DD / YYYY

ANGEL MIRAMONTES
Printed Name

Check one.
☐ Debtor or Debtor's Attorney
☒ Creditor or Creditor's Attorney

Check one.
☐ Presumption of Undue Hardship
☒ No Presumption of Undue Hardship
*See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
**District of ARIZONA**

In re DANIEL J PENA
TIFFANY D PENA,
*Debtor(s)*

Case No. 4:16-bk-01533

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** ARIZONA STATE CREDIT UNION

☒ Check this box if Creditor is a Credit Union

## I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this Reaffirmation Documents packet.**

1. Brief description of the original agreement being reaffirmed: 2005 NISSAN ARMADA
*For example, auto loan*

2. *AMOUNT REAFFIRMED*: $7,613.81

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before the date you sign this Reaffirmation Agreement.

*See the definition of "Amount Reaffirmed" in Part V.C below.*

3. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is 4.20%.

*See definition of "Annual Percentage Rate" in Part V.C below.*

This is a *(check one)* ☒ Fixed rate ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

4. Reaffirmation Agreement Repayment Terms:

☒ If fixed term, $293.29 per month for 28 months starting on 5/12/2016.

☐ If not fixed term, describe repayment terms: ____________________.

5. Describe the collateral, if any, securing the debt:

| | |
|---|---|
| Description: | 2003 NISSAN ARMADA |
| Current Market Value | $8,447.00 |

6. Did the debt that is being reaffirming arise from the purchase of the collateral described above?

☐ Yes ☒ No

| | |
|---|---|
| If yes, what was the purchase price for the collateral? | $ |
| If no, what was the amount of the original loan? | $12,752.95 |

7. Detail the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

| | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $7,710.92 | $7,613.81 |
| Annual Percentage Rate | 4.20% | 4.20% |
| Monthly Payment | $293.29 | $293.29 |

8. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit: ____________________

## II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

1. Were you represented by an attorney during the course of negotiating this agreement?

Check one. ☒ Yes ☐ No

2. Is the creditor a credit union?

Check one. ☒ Yes ☐ No

3. If your answer to EITHER question 1. or 2. above is "No" complete a. and b. below.

a. My present monthly income and expenses are:

i. Monthly income from all sources after payroll deductions (take-home pay plus any other income) $__________

ii. Monthly expenses (including all reaffirmed debts except this one) $__________

iii. Amount available to pay this reaffirmed debt (subtract ii. from i.) $__________

iv. Amount of monthly payment required for this reaffirmed debt $__________

*If the monthly payment on this reaffirmed debt (line iv.) is greater than the amount you have available to pay this reaffirmed debt (line iii.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

b. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or on me because:

Check one of the two statements below, if applicable:

☐ I can afford to make the payments on the reaffirmed debt because my monthly income is greater than my monthly expenses even after I include in my expenses the monthly payments on all debts I am reaffirming, including this one.

☐ I can afford to make the payments on the reaffirmed debt even though my monthly income is less than my monthly expenses after I include in my expenses the monthly payments on all debts I am reaffirming, including this one, because: __________

Use an additional page if needed for a full explanation.

4. If your answers to BOTH questions 1. and 2. above were "Yes," check the following statement, if applicable:

☒ I believe this reaffirmation agreement is in my financial interest and I can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I (We) hereby certify that:

i. I (We) agree to reaffirm the debt described above.

ii. Before signing this reaffirmation agreement, I (we) read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

iii. The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

iv. I am (We are) entering into this agreement voluntarily and fully informed of my (our) rights and responsibilities; and

v. I (We) have received a copy of this completed and signed Reaffirmation Documents packet.

SIGNATURE(S):

Date 5/27/16 Signature [signature]
*Debtor*

Date 5-27-16 Signature [signature]
*Joint Debtor, if any*

If a joint reaffirmation agreement, both debtors must sign.

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor ARIZONA STATE CREDIT UNION 2355 W PINNACLE PEAK RD PHOENIX, AZ 85027
*Print Name* *Address*

ANGEL MIRAMONTES [signature] 8/11/16
*Print Name of Representative* *Signature* *Date*

## IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☒ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 5/24/16 Signature of Debtor's Attorney [signature]

Print Name of Debtor's Attorney BENJAMIN JOSEPH WRIGHT

**Arizona State Credit Union**
2355 W Pinnacle Peak Road
Phoenix, AZ 85027

# CLOSED-END NOTE, DISCLOSURE, LOAN AND SECURITY AGREEMENT

| BORROWER(S): | | | DATE OF LOAN | LOAN MATURITY DATE | LOAN OFFICER |
|---|---|---|---|---|---|
| DANIEL J PENA | PO BOX 995 | SAFFORD, AZ 85546 | 03/28/2014 | 08/12/2018 | [redacted] |
| TIFFANY D PENA | 2135 N SOCHI LANE | SAFFORD, AZ 85546 | LOAN NUMBER: [redacted] | | BORROWER'S ACCOUNT NUMBER: [redacted] |
| | | | BORROWER'S DATE OF BIRTH: [redacted] | | CO-BORROWER'S DATE OF BIRTH: [redacted] |

| ANNUAL PERCENTAGE RATE: The cost of your credit as a yearly rate. | FINANCE CHARGE: The dollar amount the credit will cost you. | Amount Financed: The amount of credit provided to you or on your behalf. | Total of Payments: The amount you will have paid after you have made all payments as scheduled. | Total Sale Price: Total cost of your purchase on credit, including your down payment of $ |
|---|---|---|---|---|
| 4.200 %* | $ 1,282.02 | $ 12,752.95 | $ 15,250.86 | $ |

[X] *Automatic Payment Discounted Rate: If checked, you will receive a 0.25% discount if you agree to make your loan payments via automatic deduction or payroll deduction. This will result in paying off your loan sooner than disclosed below.

Your payment schedule will be:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | | WHEN PAYMENTS ARE DUE | |
|---|---|---|---|---|
| 51 | $ 293.29 | Monthly | Beginning | 05/12/2014 |
| 1 | $ 293.07 | | | 08/12/2018 |

*Variable Rate Feature. The Annual Percentage Rate Disclosed above may increase in the event you fail to provide the Credit Union with properly signed documents to perfect the Credit Union's security interest. Any rate increase will affect the number of payments you make and will remain in effect until the security interest has been perfected. For example, if your loan was for $20,000 at 8% and the rate increased to 16% for one year, you would have to make approximately 5 extra payments.

Security: You are giving a security interest in: [X] The goods or property described below. [ ] Your shares and/or deposits in the credit union
Collateral for other loans will also secure this loan. [ ]

Late Charges: If your payment is more than 10 days past due, you will be charged 10% of the payment due or $10.00, whichever is greater.

Required Deposit Balance: The Annual Percentage Rate does not take into account your required deposit balance, if any.

Property Insurance: You may obtain property insurance from anyone you want that is acceptable to the credit union. If you do not obtain property insurance the credit union will provide it for you. If insurance is provided through the credit union: Total Cost $ 0 Term is N/A

Filing Fees: $

Prepayment: If you pay off early, you will not have to pay a penalty.

"e" means estimate.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

| ITEMIZATION OF AMOUNT FINANCED OF | $ 12,752.95 |
|---|---|
| AMOUNT GIVEN TO YOU DIRECTLY | $ |
| AMOUNT PAID ON YOUR ACCOUNT | $ |
| PREPAID FINANCE CHARGE | $ 0.00 |

Amount Paid to Others on Your Behalf (Describe) *A portion will be retained by us.

| | | | |
|---|---|---|---|
| HUGHES FEDERAL C | | | |
| $ 12,334.95 | $ | $ | $ |
| $ | $ | $ * | $ * |

## SECURITY INFORMATION

| | YEAR | MAKE | MODEL | BODY TYPE | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|---|---|
| **MOTOR VEHICLES:** | 2005 | Nissan | Armada | SE Sport Utility 4D | 5N1AA08A65N736249 |

| | ACCOUNT NUMBER | AMOUNT | ACCOUNT NUMBER | AMOUNT |
|---|---|---|---|---|
| **SHARES PLEDGED:** | | $ | | $ |

**OTHER COLLATERAL:**

## LOAN SIGNATURES

You agree that the terms and conditions in the disclosure statement and the loan and security agreements attached hereto shall apply to this loan. If there is more than one borrower, you agree that all the conditions of the loan and security agreements governing this loan shall apply to both jointly and severally. You acknowledge that you have received a copy of the loan and security agreements and disclosure statement. If you purchase optional loan products in connection with this loan, you understand that a portion of the premium or fee you pay will be retained by the credit union (or paid back to the credit union by the service provider) as compensation for making these services available to you. You also acknowledge receipt of the product application(s), disclosures, and contract(s) regarding the product(s).

Negative Information Notice: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

NOTICE TO CONSUMER: THIS IS A CONSUMER CREDIT TRANSACTION. (A) DO NOT SIGN ANYTHING BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (B) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (C) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT.

THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

CAUTION- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

| | |
|---|---|
| BORROWER'S SIGNATURE X (signature) DATE 3/28/14 | [ ] CO-BORROWER [ ] *OTHER OWNER [ ] **GUARANTOR DATE X |
| [ ] CO-BORROWER [ ] *OTHER OWNER [ ] **GUARANTOR DATE X (signature) 3-28-14 | [ ] CO-BORROWER [ ] *OTHER OWNER [ ] **GUARANTOR DATE X |

*OTHER OWNER: Any person who has a property interest (other than as a renter or lessor) in the above described collateral signs here. The other owner, unless also a co-borrower, is not obligated to pay the debt, but understands that the credit union has a security interest in the collateral as explained in the Security Agreement. **GUARANTOR: Upon default, the credit union may seek immediate payment from the guarantor of any and all sums due on the loan. The guarantor waives all notice to which he or she would otherwise be entitled by law.

[ ] **CONSUMER'S CLAIMS AND DEFENSES NOTICE - IF CHECKED, SEE NOTICE BELOW**

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.


COPYRIGHT 2005 Securian Financial Group, Inc. All rights reserved.

[redacted] [redacted]

| BORROWER'S NAME | LOAN NUMBER | ACCOUNT NUMBER | DATE OF LOAN |
|---|---|---|---|
| DANIEL J PENA | [redacted] | [redacted] | 03/28/2014 |

## ARIZONA STATE CREDIT UNION PAYMENT PROTECTION PLAN LOAN ADDENDUM

**This Product Is Optional.** Arizona States Payment Protection Plan ("Program") is optional. Whether or not you purchase the Program will not affect your application for credit or the terms of any existing credit agreement you have with us. You may cancel the Program at any time. This Addendum will be governed by the laws of the State of Arizona.

If the Covered Loan is an open-end credit plan, check the box below.

☐ This loan/subaccount only

| OPTIONS | | | | |
|---|---|---|---|---|
| **YOU ELECT:** ***(Check only one box)*** | ☒ **Option 1** -- Loss of Life -- Disability -- Involuntary Unemployment | ☐ **Option 2** -- Loss of Life -- Disability | ☐ **Option 3** -- Loss of Life | ☐ **No Protection** |
| **Cost per $1,000 monthly outstanding loan balance*:** | $3.27 | $2.36 | $0.68 | |

**Estimated Total Fees for Option Chosen (Closed-End Only) $** 1,215.89

*** Benefit Maximums:** **Death Protection** cancels a maximum of **$75,000.**
**Disability Protection has a maximum cancellation of $12,000** per each occurrence.
**Involuntary Unemployment Protection has a maximum cancellation of $3,000** per each occurrence.

The program protects the first two borrowers listed on the loan contract.
The protected borrower(s) may not qualify for all benefits.

☐ **No, I do not wish to apply for the voluntary Debt Protection Plan at this time. _______ (Borrower 1 Initials) _______ (Borrower 2 Initials)**

**Application Eligibility:**

To be eligible to apply, I must meet the following conditions. By signing this Application, I am stating that: (1) I am under age 70; (2) *If applying for Death or Disability protection:* During the last 2 years, I have not been advised of or treated for: cancer, heart attack, coronary artery disease, stroke, cirrhosis, or had a positive HIV test; (3) *if applying for Disability or Unemployment protection:* I am presently working twenty-five (25) or more hours per week; (4) *If applying for Involuntary Unemployment protection:* I am not self-employed.

**Borrower's Signature**

I acknowledge and agree that: **(a)** I meet the eligibility requirements listed above. If it is discovered that I do not meet the eligibility requirements above, my participation in the Plan will be terminated, I will receive a refund of any fees paid, and an otherwise valid claim will be denied. **(b)** I have received the disclosures herein and have thoroughly read the *Debt Protection Program Addendum ("Addendum")*, and agree to abide by the terms of the Addendum; **(c)** I authorize the Plan fees to be added to my loan each month; and **(d)** I understand that I may not be eligible for all benefits contained in the Plan. This document is hereby incorporated into Borrowers loan documentation as if fully set forth therein. **There are eligibility requirements, conditions, and exclusions that could prevent you from receiving benefits under the Program. See the Program Addendum for details.**

**Your signature below means:** (a) your election above will remain in effect, according to the terms of this addendum, unless subsequently modified; (b) you agree that you have received and thoroughly read this addendum; and (c) you authorize the Program Fee to be added to your outstanding balance each month.

☐ **Subsequent Election**

If the election above represents a replacement of credit insurance or similar payment protection or a change in the program for an existing loan, and the cost of the newly elected protection results in increased program fees, you agree to:

☐ make more loan payments of the same amount until what you owe has been repaid.

☐ increase your loan payment to $ __________ per ______________ .

| BORROWER 1 SIGNATURE | DATE | BORROWER 2 SIGNATURE | DATE |
|---|---|---|---|
| X [signature] | 3/28/14 | X Tiffany Pena | 3-28-14 |

By phone conversation, I hereby represent that the above-referenced borrower has authorized election of the specified coverage(s) indicated above.

DATE ____________ TIME ____________ SIGNATURE OF CREDIT UNION EMPLOYEE ____________


COPYRIGHT 2005 Securian Financial Group, Inc. All rights reserved

| BORROWER'S NAME | LOAN NUMBER | ACCOUNT NUMBER | DATE OF LOAN |
|---|---|---|---|
| DANIEL J PENA | [redacted] | [redacted] | 03/28/2014 |

IN THESE AGREEMENTS, THE WORDS "I," "ME," "MY" AND "MINE" MEAN ALL THOSE NAMED AS BORROWERS. THE WORDS "YOU," "YOUR" AND "YOURS" MEAN THE CREDIT UNION.

**LOAN AGREEMENT**

**Payments/Finance Charges:** For value received, I promise to pay, at your office, all amounts due. All payments shall be made pursuant to the disclosure statement on page 1 of this document. I understand that the finance charge and total of payments shown on page 1 of this document are based on the assumption that all installment payments will be made on the scheduled due dates. If I fail to pay any installment by the time it is due, I will pay additional interest on the overdue amount and my loan may not be paid in full at the end of the term. In such case, any remaining balance should be due in full immediately.

**Allocation of Payments and Additional Payments:** Payments and credits shall be applied in the following order: any amounts past due; any fees or charges owing, including any insurance premiums; accrued interest or finance charges; outstanding principal. Payments made in addition to regularly scheduled payments shall be applied in the same order.

**Late Charges:** If I make a late payment, I agree to pay a late charge if one is disclosed on page 1 of this document.

**Borrower Responsibility:** I promise to notify you of any change in my name, address or employment. I promise not to apply for a loan if I know there is a reasonable probability that I will be unable to repay my obligation according to the terms of the credit extension. I promise to inform you of any new information which relates to my ability to repay my obligation. I promise not to submit false or inaccurate information or willfully conceal information regarding my creditworthiness, credit standing, or credit capacity.

**Default:** ***The following provision applies to borrowers in Idaho, Kansas, and Maine:*** I will be in default if (1) I do not make a payment of the required amount when due; or (2) you believe the prospect of payment, performance, or realization on any property given as security is significantly impaired.

***The following provision applies to borrowers in Wisconsin:*** I shall be in default under this Agreement if any of the following occur: (a) If an amount exceeding one (1) full payment due under this Agreement is more than ten (10) days late or if the first or last payment due under this Agreement is more than forty (40) days late; OR (b) I breach any term or condition of this Agreement, which breach materially impairs my ability to pay amounts when due or materially impairs the condition, value, or protection of your rights to or in any collateral securing this transaction.

***The following provision applies to all other borrowers:*** I shall be considered in default if any of the following occur: (1) If I break any promise made under this Loan Agreement or under the Security Agreement; or (2) if I do not use the money you loaned me for the purpose stated in my application; or (3) if you should, in good faith, believe that prospect of payment, performance or realization of the collateral, if any, is impaired; or (4) if I die; or (5) if I file a petition in bankruptcy, insolvency, or receivership or am put involuntarily into such proceedings; or (6) if the collateral, if any, given as security for this loan is lost, damaged or destroyed, or if it is levied against, attached, garnished, or seized for any reason under any authority; or (7) if I do not pay on time any of my current or future debts to you; or (8) if anyone is in default of any security agreement given in connection with any loan under this Note; or (9) If I make any false or misleading statements in any credit application or update of credit information; or (10) I am in default of any other loan or security agreement I have with the Credit Union; or (11) I use the Note for any illegal purpose or transaction as determined by applicable law. If I default, you may, at your option, declare this loan immediately due and payable, and I must immediately pay to you at that time the total unpaid balance, as well as the **Finance Charge** to date, any late charges and costs of collection permitted under law, including reasonable attorney's fees.

**Costs of Collection:** You shall pay all costs incurred by us in collecting any amount you owe or in enforcing or protecting our rights. Costs of collection include, but are not limited to, collection agency fees, repossession fees, appraisals, environmental site assessments, casualty insurance, and reasonable attorney's fees for any action taken by an attorney who is not our salaried employee in order to collect this loan or preserve or protect our rights and remedies, including, without limitation, pre-suit demands for payment, pre- suit mediation or settlement negotiations, investigation and assessment of our rights, participation in bankruptcy cases, matters, and proceedings (including, without limitation, filing proofs of claim, pursuing reaffirmation agreements, attending meetings of creditors, and pursuing complaints, motions, and objections that relate in any way to the credit union's collateral or right to payment), collateral disposition, non-bankruptcy suits and/or administrative actions, and appeals. *For Alabama borrowers*: attorney's fees after default shall not exceed 15% of the unpaid debt, or such higher amount as a court may allow. *For Georgia borrowers:* attorney's fees shall not exceed 15% of principal and accrued interest, or such higher amount as a court may allow.

**Perfection of Security Interest; Increase In Rate; Default:** If Credit Union is unable to perfect its lien on the collateral pledged for this loan, the Annual Percentage Rate shall increase to the highest rate allowed by law at the time that Credit Union determines that the lien can't be perfected. Borrower's minimum monthly payment shall also increase accordingly. Credit Union may also, at its option, consider the loan to be in default and can call the loan immediately due and payable, in which case Borrower must pay the entire amount due in one lump sum. The loan while in default will bear interest at the highest rate allowed by law. Credit Union may waive or delay its right to declare default or to raise the rate at any time without losing its right to declare default or raise the rate at a later time.

**Perfecting and Releasing the Lien:** I agree to pay all fees and take any other action that you require in order to perfect or release your lien on the collateral.

**Action Upon Default:** ***The following provision applies to borrowers in Colorado, District of Columbia, Kansas, Maine, Massachusetts, Missouri, Nebraska, and West Virginia:*** Once I have defaulted, and after the expiration of any right I may have under applicable state law to cure my default, you can demand immediate payment of the entire unpaid balance of the loan without giving me advance notice. The principal balance in default shall bear interest at the contract rate, or a default rate if one has been disclosed to me, or another rate if required by applicable law.

***The following provisions applies to borrowers in Wisconsin:***

<u>Right to Cure Default</u>: If I am in default under this Agreement, you must give a notice of default to me pursuant to Wisconsin Statutes sec. 425.104 - 425.105. I shall have fifteen (15) calendar days from the date the notice is mailed to me to cure the default. In the event of an uncured default, you shall have all the rights and remedies for default provided under the Wisconsin Consumer Act, Uniform Commercial Code, or other applicable law, including, but not limited to, the right to repossess the collateral. You may waive any default without waiving any other subsequent or prior default by me.

<u>No Right To Cure</u>: Pursuant to Wis. Stat. Sec. 425.105(3), I shall not have the right to cure a default if the following occur twice during the preceding twelve (12) months: (a) I was in default on the closed-end note; (b) You gave me notice of the right to cure such previous default in accordance with Wis.Stat.Sec. 425.104; and (c) I cured the previous default.

Nothing in this Agreement shall be construed to restrict your ability to exercise your rights under the Wisconsin Consumer Act, Uniform Commercial Code, or other applicable law, including, but not limited to, the right to repossess the collateral.

***The following provision applies to borrowers in all other states:*** Once I have defaulted, you may, at your option, declare all amounts under the Note immediately due and payable, and I must immediately pay to you at that time the total unpaid balance, as well as the Finance Charge to date, any late charges and costs of collection permitted under law, including reasonable attorney's fees. The principal balance in default shall bear interest at the contract rate.

**Delay In Enforcement:** You may delay enforcing any of your rights under this agreement without losing them.

**Irregular Payments:** You may accept late payments or partial payments, even though marked "payment in full," without losing any of your rights under this agreement.

**Co-borrowers:** If I am signing this agreement as a co-borrower, I agree to be equally responsible with the borrower, but you may sue either or both of us. You do not have to notify me that this agreement has not been paid. You may extend the terms of payment and release any security without notifying or releasing me from responsibility on this agreement.

**Governing Law:** These agreements shall be construed and enforced in accordance with the laws of the State of Arizona. *If I have entered into a mandatory arbitration agreement in connection with this loan:* if any provisions within this Agreement pertaining to jurisdiction and venue are inconsistent with the arbitration agreement, the arbitration agreement will govern.

**Change In Terms:** The terms of this Closed-end Note, Disclosure, Loan & Security Agreement, including any fees disclosed, are subject to change without prior notice, subject to applicable law.

**Contractual Pledge of Shares: I pledge all my shares and deposits in the credit union, including future additions, as security for this loan. In case I default, you may apply these shares and deposits to the payment of all sums due at the time of default, including costs of collection and reasonable attorney's fees. No lien or right to impress a lien on shares and deposits shall apply to any of my shares which may be held in an "Individual Retirement Account" or "Keogh Plan."**

| BORROWER'S NAME | LOAN NUMBER | ACCOUNT NUMBER | DATE OF LOAN |
|---|---|---|---|
| DANIEL J PENA | [redacted] | [redacted] | 03/28/2014 |

IN THESE AGREEMENTS, THE WORDS "I," "ME," "MY" AND "MINE" MEAN ALL THOSE NAMED AS BORROWERS. THE WORDS "YOU," "YOUR" AND "YOURS" MEAN THE CREDIT UNION.

**State Notices:**

***NOTICES TO WISCONSIN BORROWERS:*** No provision of a marital property agreement, a unilateral agreement under Wis. Stat. Section 766.59, or a court decree under Wis.Stat. 766.70 adversely affects the interest of the Credit Union unless prior to the time the credit is extended, the Credit Union is furnished with a copy of the agreement or statement, or has actual knowledge of the adverse provision when the obligation to the Credit Union is incurred.

***NORTH DAKOTA NOTICE TO BORROWERS PURCHASING A MOTOR VEHICLE - THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, THE BORROWER MAY HAVE TO PAY THE DIFFERENCE.***

***NOTICE TO UTAH BORROWERS:*** This written agreement is a final expression of the agreement between me and the Credit Union. This written agreement may not be contradicted by evidence of any oral agreement.

***NOTICE FOR ARIZONA OWNERS OF PROPERTY:*** It is unlawful for a borrower to fail to return a motor vehicle that is subject to a security interest within thirty days after I have received notice of default. The notice will be mailed to the address I provided on this document unless I have given the Credit Union a new address. It is my responsibility to notify the Credit Union if my address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.

***NOTICE TO CALIFORNIA RESIDENTS:*** By signing this Note, **I specifically agree that the Credit Union may access the records of the California Department of Motor Vehicles from time to time to obtain my current mailing address**, and by so agreeing, I am specifically waiving my rights under sections 1808.21 and 1808.22 of the California Vehicle Code.

***NOTICE TO TEXAS BORROWERS- INSURANCE REQUIRED:*** I am required to: (i) keep the collateral insured against damage in the amount of the loan or another amount if you so specify; (ii) purchase this insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and (iii) name you as the person to be paid under the policy in the event of a loss. I must also provide you a copy of the policy and proof of the payment of premiums if you so request. If I fail to meet any of these requirements, you may obtain collateral protection insurance on my behalf at my expense.

***For Missouri Residents:*** **Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

***For Vermont Residents:*** **NOTICE TO CO-BORROWER: YOUR SIGNATURE ON THIS LOAN MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THE LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

***OHIO RESIDENTS ONLY:*** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

***WASHINGTON RESIDENTS ONLY:***

WARNING

UNLESS I PROVIDE YOU WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY YOUR LOAN AGREEMENT, YOU MAY PURCHASE INSURANCE AT MY EXPENSE TO PROTECT YOUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT MY INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE YOU PURCHASE MAY NOT PAY ANY CLAIM I MAKE OR ANY CLAIM MADE AGAINST ME. I MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT I HAVE OBTAINED PROPER COVERAGE ELSEWHERE. I AM RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY YOU. THE COST OF THIS INSURANCE MAY BE ADDED TO MY LOAN BALANCE. IF THE COST IS ADDED TO THE LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE MY PRIOR COVERAGE LAPSED OR THE DATE I FAILED TO PROVIDE PROOF OF COVERAGE. THE COVERAGE YOU PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE I CAN OBTAIN ON MY OWN AND MAY NOT SATISFY WASHINGTON'S MANDATORY LIABILITY INSURANCE LAWS.

**SECURITY AGREEMENT**

**Security Interest; PLEDGE OF SHARES; Statutory Lien; Set-off; Administrative Freeze:** To secure the payment of this loan and all expenditures incurred by the credit union in connection with this loan: **(a) I grant the Credit Union a security interest** in the property described on Page 1 of this document ("Collateral"). The security interest includes all increases, substitutions and additions to the secured property, proceeds from any insurance on the secured property and all earnings received from the secured property. The security interest also includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which I buy within 10 days of the loan or any extensions, renewals or refinancing of the loan. If the value of the property declines, I promise to give you more security if asked to do so. I also agree to abide by the terms of the Security Agreement. **(b) I GRANT AND PLEDGE TO YOU A CONSENSUAL LIEN ON ALL SUMS ON DEPOSIT** to secure my obligations to the credit union pursuant to applicable state law. "All sums on deposit" and "shares" for purposes of this pledge means all deposits in any share savings, share draft, club, certificate, P.O.D., revocable trust or custodial accounts(s), whether jointly or individually held, that you have on deposit now or in the future, all of which are deemed "general deposits" for the purpose of this pledge. My pledge does not include any IRA, Keogh, tax escrow, irrevocable trust or fiduciary account in which I do not have vested ownership interest. **(c) I acknowledge and agree to impressment of the Credit Union's statutory lien rights** under the Federal Credit Union Act and/or applicable state law as of the date of my loan, which gives you the right to apply the sums in my account(s), to satisfy any obligations I owe to the credit union, regardless of contributions at the time of default, and without further notice to me or any owner of the account(s). **(d) I acknowledge and agree to your "common law" right to set off** under applicable state law which authorizes you to apply the funds in any joint or individual account to any obligations owed to you if I default or fail to pay or satisfy any obligation to you without any legal process, court proceeding or any notice to any owner of the account(s) affected hereunder or otherwise under this Agreement. **(e) I specifically agree that you have a right to place an administrative freeze on any of my joint or individual account(s) and that such action shall not violate 11 USC 362 or other applicable law.**

**Multiple Rights; Cumulative Remedies:** I understand and agree that the Credit Union has multiple rights as enumerated above and that the remedies are cumulative. Nothing herein shall limit or restrict the remedies available to you following any event of default under the terms of my loan documents.

**Cross- collateralization: Property given as security for this loan or for any other loan Borrower has with the credit union will secure all amounts Borrower owes the credit union now and in the future. However, property securing another debt will not secure this loan if such property is Borrower's principal residence (unless the proper rescission notices are given and any other legal requirements are satisfied), or are non-purchase money household goods.**

**Transfer of Collateral:** I will not change the location of, sell or transfer the collateral unless I have your prior written consent.

**Release of Lien:** You will not release any lien on any collateral under this Note if I am delinquent on, or in default on, any other loan I have with you. For example, if I am in default on a line of credit, you will not release your lien on a vehicle loan, even if the vehicle loan is current or paid in full.

**Good Title:** I warrant that I have good title to the collateral, free of all security interests except that given to the credit union and except for any interest of a non-co- maker owner of the collateral who has signed the agreement in the indicated place.

| BORROWER'S NAME | [redacted]BER | [redacted] | DATE OF LOAN |
|---|---|---|---|
| DANIEL J PENA | | | 03/28/2014 |

IN THESE AGREEMENTS, THE WORDS "I," "ME," "MY" AND "MINE" MEAN ALL THOSE NAMED AS BORROWERS. THE WORDS "YOU," "YOUR" AND "YOURS" MEAN THE CREDIT UNION.

**Maintenance of Collateral:** I will pay all taxes, assessments, and liens against or attached to the property described and further agree to keep the property in good condition, housed in a suitable shelter. I agree to execute financing statements and security agreement amendments at your request and will defend the property against adverse third party claims.

**Additional Security:** Should you feel at any time that the security presented has diminished in value, or for any reason feel that additional security is required, I agree to assign to you within ten (10) days whatever additional security you feel is necessary to protect yourself against possible loss.

**Actions Upon Default:** If a default as defined in the Loan Agreement should occur, you, or a third party designated by you, have the authority, upon such default, to repossess and sell the collateral in a lawful manner. This includes authority to take possession of any personal property contained in the collateral. In such cases, you or your authorized representatives may, at your option, enter the premises where the collateral is kept and take possession, subject to applicable laws. You have the right to render the property pledged as collateral unusable and may dispose of the collateral on the premises where the collateral is kept. If you decide to sell the collateral at a public sale, private sale or otherwise dispose of the collateral, you will provide reasonable notice if required by law and will otherwise comply with applicable state law. If you sell or otherwise dispose of the collateral you may collect from me reasonable expenses incurred in the retaking, holding and preparing the collateral for and arranging the sale of the collateral. You may also collect reasonable attorney's fees and legal expenses, permitted by applicable law, incurred in connection with disposition of the property. Unless I default, I may keep possession of the property (collateral) described and use it in any lawful manner consistent with this agreement or with the insurance policy on the collateral. I understand that you have certain rights and legal remedies available to you under the Uniform Commercial Code and other applicable laws, and that you may use these rights to enforce payment if I default. In the event of default, I will at your request assemble the property (collateral) and make it available to you at a place of your choosing. If you decide to waive this default, it will not constitute waiver of any other subsequent defaults.

**Attorney-in-Fact:** You are hereby appointed as my Attorney-in- Fact to perform any acts which you feel are necessary to protect the collateral and the security interest which this agreement creates.

**Joint Borrowers:** If there is more than one borrower, our obligations under this agreement are joint and several, each being equally responsible to fulfill the terms of this agreement.

**Others Bound:** This security agreement not only binds me, but my executors, administrators, heirs, and assigns.

**Further Assurances:** I agree to execute any further documents, and to take any further actions, reasonably requested by Credit Union in order to evidence or perfect the security interests granted herein or to effectuate the rights granted to Credit Union.

**Governing Law:** This Security Agreement is being executed and delivered in, and is intended to be performed in, the State of Arizona and shall be construed and enforced in accordance with the laws of the State of Arizona, except to the extent that the Uniform Commercial Code provides for the application of the law of another state.

**Additional Advances:** Any additional advances made by you for the payment of taxes or assessments or liens of any kind, or premiums on insurance and the interest owing thereon or any other advance necessary to perfect or protect your security interest shall also be secured by this agreement. Such amounts shall be added to my loan balance and my minimum payment due shall be increased or my loan term extended accordingly.

*Applies to Louisiana residents only:*

## Louisiana law permits repossession of motor vehicles upon default without further notice or judicial process.

If the secured collateral is a motor vehicle and I am in default, you may seize and sell the motor vehicle without demand for payment or advance notice to me. You may obtain and use a key or similar device to unlock and operate the motor vehicle. Collateral other than motor vehicles may be repossessed without judicial process only as allowed by applicable Louisiana law.

For purposes of foreclosure under Louisiana executory process, **I hereby confess judgment in your favor for all amounts secured by the Note,** including, but not limited to, principal, interest, late charges, costs of collection, costs of preservation of the collateral, reasonable attorney's fees, and all other amounts under the Note. You may appoint a keeper of the property in the event of foreclosure. To the extent allowed under Louisiana law, I hereby waive the following rights and procedures under Louisiana law: (a) all rights and benefit of appraisal; (b) notice of seizure; (c) the 3-day delay afforded under Articles 2331 and 2722; and (d) all other provisions under Articles 2331, 2722 and 2723 and all other Articles not specifically mentioned herein. I further agree that any declaration of fact made by authentic act by a person declaring that such facts are within his or her knowledge shall constitute authentic evidence of facts for the purposes of foreclosure under applicable Louisiana law and for the purposes of LSA-R.S. 9:3504(D)(6) and LSA-R.S. 10:9-508, to the extent applicable.

**PROPERTY INSURANCE; LENDER-PLACED INSURANCE - PLEASE READ CAREFULLY**

(a) My requirement to maintain property insurance. I am required to carry insurance to protect my interest and your interest in the collateral securing this loan. The insurance:

- Must protect against any loss by fire or theft, and collision and comprehensive coverage on motor vehicles and other property pledged as security on this loan.
- Must (i) be in an amount and type sufficient to repair the collateral to its existing condition prior to the loss, and/or to replace the collateral with comparable or like property, minus depreciation, if it is damaged or lost; or (ii) be in an amount and type as you might otherwise inform me that you require.
- Must have a maximum deductible as set forth by you.
- Must be maintained in force for as long as the loan is outstanding.
- Must name you as loss payee. You must receive the loss payee endorsement within 30 days of my loan date.

These requirements are solely in your discretion and you may change any of these requirements at any time for any reason. The insurance may be obtained by any insurer of my choice that is acceptable to you.

(b) Lender-placed property insurance. Please read carefully:

- **If I fail to maintain insurance satisfying the requirements set forth above, or if I fail to provide you proof of such coverage, you may, but do not have to, obtain insurance to protect your interest (not mine) in the property.**
- **The total cost of lender-placed insurance will be added to the loan balance.** The total cost of this insurance includes, but is not limited to, the premium, any administrative costs you incur, any commissions that may be earned, and other reasonable expenses related to my failure to maintain insurance. This cost will be paid by me either on demand, or by increasing my periodic payment, or by extending the loan term.
- Whether you obtain insurance, and the amount and types of coverage that you may obtain, is solely in your discretion. You may obtain this insurance from anyone you want, including an affiliate of yours, and such affiliate may earn a commission on the coverage.
- **The insurance placed by you is without benefit to me personally,** and is primarily for your protection. It may not adequately protect my interest in the collateral or any personal property contained in the collateral, and will not satisfy any mandatory liability or financial responsibility requirements under state law.
- **Coverage obtained by you may be considerably more expensive than coverage I could obtain on my own** and may be different than previous policies I may have had or policies that I may prefer.
- Any insurance placed by you will be effective as of the date my policy lapsed or, if I never obtained insurance, the date of the loan.
- Nothing in this agreement is intended to confer third-party beneficiary rights or status to me with respect to any agreements between you and your insurer or its agent.

(c) How to remove lender-placed property insurance. **I may have the lender-placed coverage cancelled at any time by providing evidence to you that I have purchased insurance coverage satisfying the requirements set forth above.** If I do so, I will receive a refund of any unearned premiums and finance charges on the lender-placed coverages and my loan balance will be adjusted accordingly.

(d) Other. I assign you the right to receive and endorse any insurance proceeds check, to apply those proceeds to the sums I owe, and I direct any insurer to pay those proceeds directly to you. I further authorize you or your representative to obtain the necessary information for verification of adequate coverage. You, or your affiliates, may receive compensation or reimbursement of expenses related to any insurance premiums added by you.

(e) Default. If I fail to maintain insurance as set forth above, I will be in default of my loan. You may either place your own insurance on the collateral as explained above, or you can declare me in default and take all remedies set forth in my loan or security agreement or available to you under applicable law, including calling the loan immediately due.

| BORROWER'S NAME | LOAN NUMBER | ACCOUNT NUMBER | DATE OF LOAN |
|---|---|---|---|
| DANIEL J PENA | [redacted] | [redacted] | 03/28/2014 |

## PROGRAM ADDENDUM

*As used in this Addendum "you", "your" or "Borrower" means the person(s) who are obligated to repay a loan to us who have enrolled in the Program. "We", "our", "us" means, Arizona State Credit Union, 2355 W. Pinnacle Peak Road, Phoenix, AZ 85027. "Plan Administrator" means Minnesota Life Insurance Company, 400 Robert Street North, St. Paul, Minnesota, 55101, or one of its affiliates, or a contracted third party.*

This Addendum amends your loan or credit addendum. By enrolling in this Debt Protection Plan ("Plan"), you agree to abide by the terms of this Addendum. The Debt Protection Application is a part of this Addendum and is hereby incorporated as if fully set forth herein.

### DEFINITIONS

**ADVANCE** means each extension of credit we provide to you under a loan.

**BORROWER** means a person who is obligated to repay the advance to us, either principally or jointly and severally. It does not include guarantors.

**EFFECTIVE DATE** means that date on which your Plan becomes effective, which is: the later of (1) the date you enroll in, and your eligibility is approved for, the Plan; or (2) the date of your first advance under a protected open-end credit plan.

**FULL-TIME EMPLOYMENT OR EMPLOYED FULL-TIME** means actively working for income 25 hours or more per week.

**OUTSTANDING BALANCE** AND **PAYMENT**: "Outstanding Balance" means the outstanding loan balance as of the date a Protected Event occurs. "Payment" means the minimum monthly loan payment scheduled under your loan addendum. Outstanding Balance and Payment both refer to the protected amount under the Plan and include principal, interest, the Plan fee and any amounts which the creditor and borrower agreed to finance as part of the loan at the time the credit is extended. It does not include late fees or other fees; real estate taxes or property insurance premiums; or any amount that represents defaults in scheduled payments of either interest or principal. A scheduled lump-sum Balloon payment will only be protected if the Protected Event cancels the Outstanding Balance. Additionally, any advance taken during any period of Involuntary Unemployment or Disability will not be protected and the payment for that advance will not be cancelled. You will be responsible for re-paying any amounts that are not cancelled.

**PRE-EXISTING CONDITION:** means a condition for which you received or had medical treatment, advice or diagnostic tests either for that same condition or a related condition within the six-month period immediately prior to the Effective Date and immediately prior to each and every advance taken. However, any Protected Event resulting from any such condition or a related condition will not be excluded if the Protected Event commences six months or more after the Effective Date of protection or six months or more after the advance is taken.

### PROTECTED EVENTS

***The following describes the types of Protected Events and the protection afforded under each Plan:***

LOSS OF LIFE *(All Plan Options)*

**What is the Loss of Life benefit?**

For each protected borrower, we will cancel the amount of your Outstanding Balance as of the date of death, up to $75,000, if you die before the end of the month in which you reach age 70. If two protected borrowers die at the same time, we will cancel the lesser of the Outstanding Balance or $75,000.

**DISABILITY** *(Plan Options 1 & 2)*

**What does Disability mean and how do I qualify for Disability?**

Disability means that you are unable to engage in the significant duties of your occupation for at least 14 consecutive days; and are under the regular care and treatment of a physician; and you are not working at any job (or combination of jobs) paying you an income equal to or exceeding 80% of the wages you were earning from your full-time employment immediately preceding the date you become disabled. Benefits begin to accrue on the first (1st) day that you are disabled.

**What amounts will be cancelled under the Disability protection?**

For each occurrence of Disability, we will cancel 1/30th of the Payment for each day that you are disabled beginning with the first (1st) day of Disability and continuing for up to twelve (12) Payment cancellations. However, cancellations will immediately cease if you recover or return to work; or if the loan is paid off, is refinanced, or is discharged for any reason. Cancellation is limited to a total of $12,000 per occurrences of disability.

**What if the same or related disability occurs?**

*Please see the "What if I suffer a recurrence?" question in the General Provisions section below.*

**INVOLUNTARY UNEMPLOYMENT** *(Plan Option 1)*

**What does Involuntary Unemployment mean and how do I qualify for protection?**

Involuntary Unemployment means that for at least 14 consecutive days, you are not working at any job, or a combination of jobs, for 25 hours or more per week and that you are actively seeking full-time employment. Involuntary Unemployment includes honorable discharge from active duty service by the United States Armed Forces.

Involuntary Unemployment does not include job loss because: (a) you retire; (b) you quit or resign your employment for any reason; (c) you go on vacation, take a sabbatical, or take family leave; (d) you lose your employment due to (i) willful or criminal misconduct; (ii) a normal, routine or seasonal lay-off or shut-down; (iii) disability caused by sickness or injury; (iv) voluntary furlough, voluntary unemployment or voluntary loss of wages; or (v) a strike, lockout, or labor dispute.

To qualify for Involuntary Unemployment protection, the following requirements must be met:

1. You must have been employed full-time at the time that the involuntary unemployment occurs; and
2. You are receiving unemployment benefits for the period of unemployment for which you are making a claim under this addendum.

**What amounts are cancelled under Involuntary Unemployment protection?**

We will cancel 1/30th of the Payment for each day you are involuntarily unemployed, beginning with the first (1st) day of involuntary unemployment and continuing for (a) up to six (6) Payment cancellations per occurrence of Involuntary Unemployment; or (b) until you discontinue receiving unemployment benefits for any reason; or (c) you regain employment; whichever is earlier. Cancellation is limited to a total of $3,000 per occurrence of involuntary unemployment.

### EXCLUSIONS

***Exclusions apply to both the Outstanding Balance and any and all advances under an open-end credit plan.***

**Benefits will not be provided under any Protected Event if the Protected Event:**

(1) is due to suicide committed within the first 12 months of protection; (2) is due to an intentionally self-inflicted injury; (3) is due to a Pre-existing Condition; (4) is caused by or results from an atomic explosion or any other release of nuclear energy (except when used solely for medical treatment); (5) occurs after the end of the month during which you reach age 70; (6) is due to the commission of a felony.



COPYRIGHT 2005 Securian Financial Group, Inc. All rights reserved.

| BORROWER'S NAME | LOAN NUMBER | ACCOUNT NUMBER | DATE OF LOAN |
|---|---|---|---|
| DANIEL J PENA | [redacted] | [redacted] | 03/28/2014 |

***The following exclusions apply in addition to the above:***

**Benefits will not be provided under <u>Disability</u> protection if:**

The disability is related to a normal pregnancy.

**Benefits will not be provided under <u>Involuntary Unemployment</u> protection if:**

The involuntary unemployment commences within 180 days after your Effective Date.

## GENERAL PROVISIONS

**How do I obtain benefits and verify a Protected Event under the Plan?**

To obtain benefits under the Plan, you must notify us of a Protected Event within 30 days or as soon as possible, but no later than six (6) months after the occurrence of the Protected Event, and provide any documentation or information required by us at the time of your claim and/or throughout the period for which Payments are being cancelled. You must be able to verify the Protected Event to our satisfaction. If your delay in filing a claim prevents us in any way from determining eligibility under the Plan, no benefit will be issued.

**What if I suffer a recurrence of the same or related Protected Event?**

If you incur a claim for the same type of Protected Event again within twelve (12) months after you have recovered or returned to full-time work, we will consider this a continuation of the prior event. (For disability, however, this only applies if you are disabled due to the same condition.) This means that the maximum number of cancellations per occurrence for the prior event will still apply; if that maximum was already reached, no benefits will be issued. If you incur a claim for the same type of Protected Event again more than twelve (12) months after you have recovered or returned to full-time work, we will consider this a new event and the terms and conditions of the Plan apply as if no prior event occurred. This provision applies whether you return to work full-time with the same or different employer.

**What is the status of my loan following the occurrence of a Protected Event?**

During the time it takes to process your request for benefits, you are responsible for making your monthly payment by the due date. Once benefits begin, you are responsible for any difference between the minimum payment due on the loan and the amount that is cancelled.

**What if the term of my loan ends while I am receiving cancellations under the Plan?**

Regardless of the number of cancellations you may otherwise be entitled to, cancellations will cease if the loan is paid off, refinanced, sold or transferred, or discharged for any reason.

**Can this Addendum be contested?**

Yes. If we find that you did not meet the eligibility requirements at the time of your application, your protection under the Plan will be removed, you will receive a refund of fees paid, and an otherwise valid claim will be denied.

**How can the Plan be terminated?**

You may terminate this addendum at any time by writing us with at least 5 days advanced notice at Arizona State Credit Union, 2355 W. Pinnacle Peak Road, Phoenix, AZ 85027. If you do so within thirty (30) days of your enrollment in the Plan, we will credit your loan account for any fees charged for this protection. We can terminate this addendum by giving you written notice at least thirty (30) days in advance of the termination. Termination by us or you will be effective on the first of the month following termination. Fees for the month in which notice of termination is received will still be due and collected from the loan payment.

Your Plan participation will terminate without advance notice if (1) your loan is paid off, refinanced, sold or transferred, or discharged for any reason; (2) required loan payments are past due by 90 days or more; (3) you fail to pay the Plan Fee; (4) on the last day of the month in which the youngest protected Borrower reaches age 70; die; or (5) on the last day of the month in which the last remaining protected Borrower dies; or (6) the protected Outstanding Balance is paid off under the terms of the Plan or all maximum cancellations are reached. If you bring your loan current after your Protection has been terminated for delinquency, protection will not be reinstated automatically.

**Can the Plan Fee and terms of this Addendum Change?**

Yes. We can change the terms of this addendum, including the rates, with 30 days written notice to you. If we do so, you will be provided prior notice and an opportunity to cancel your addendum under the Plan.

**What are the tax implications?**

You may be subject to federal, state and local taxes on the amount of your cancelled loan payment or balance. You should consult your tax advisor. We or the Plan Administrator do not provide you with guidance on the tax implications, if any, of a cancelled debt.

**What if I have questions about the Plan?**

Telephone us at 800-562-0565 or write to us at Arizona State Credit Union, 2355 W. Pinnacle Peak Road, Phoenix, AZ 85027 if you have any questions regarding this Plan.

# LOAN APPLICATION

Arizona State Credit Union
2355 W Pinnacle Peak Road
Phoenix, AZ 85027

Married Applicants may apply for a separate account. Check the appropriate box to indicate Individual Credit or Joint Credit.

**Individual Credit:** Complete **Applicant** sections if only the applicant's income is considered for loan approval.
Complete **Applicant** and **Co-Applicant** sections: (1) if you are relying on income from alimony, child support, or separate maintenance or on the income or assets of another person as the basis for repayment of credit requested, or; (2) if you reside in a Community Property State, or; (3) if you are relying on property located in a Community Property State as a basis for repayment of the credit requested. Community Property States include: AK, AZ, CA, ID, LA, NM, NV, TX, WA, WI.

X **Joint Credit:** Complete **Applicant** and **Co-Applicant** sections if your co-applicant will be contractually liable for repayment of the loan and initial below:
We intend to apply for joint credit. ________ (Applicant Initials) ___TP___ (Co-Applicant Initials)

***PLEASE CHECK BELOW TO INDICATE THE TYPE OF ACCOUNT(S) AND TYPE OF CREDIT FOR WHICH YOU ARE APPLYING.***

X **Account/Loan:** Individual Joint X
*(Including ATM/Debit Card Access to the Account if Available)*

Amount Requested $ 14,318.00

Purpose/Collateral: Direct Vehicle

☐ Other Loan Request

**Repayment:** ☐ Payroll Deduction ☐ Billing Notice ☐ Automatic Payment ☐ Web Pay ☐ Other

| APPLICANT | | CO-APPLICANT X NON-APPLICANT SPOUSE/OTHER GUARANTOR | |
|---|---|---|---|
| NAME (Last - First - Initial) DANIEL J PENA | ACCOUNT NUMBER [redacted] | NAME (Last - First - Initial) TIFFANY D PENA | ACCOUNT NUMBER |
| SOCIAL SECURITY NUMBER [redacted] | MOTHER'S MAIDEN NAME [redacted] | SOCIAL SECURITY NUMBER [redacted] | MOTHER'S MAIDEN NAME [redacted] |
| E-MAIL ADDRESS [redacted] | CELL NUMBER (000)000-0000 | E-MAIL ADDRESS | CELL NUMBER |
| BIRTH DATE [redacted] / HOME PHONE | BUSINESS PHONE/EXT | BIRTH DATE [redacted] / HOME PHONE 9 | BUSINESS PHONE/EXT |
| PRESENT ADDRESS (Street - City - State - Zip) PO BOX 995 SAFFORD, AZ 85546 | X OWN RENT<br>YEARS/MONTHS AT THIS ADDRESS 3 yrs 0 mths | PRESENT ADDRESS (Street - City - State - Zip) 2135 N SOCHI LANE SAFFORD, AZ 85546 | X OWN RENT<br>YEARS/MONTHS AT THIS ADDRESS 3 yrs 0 mths |
| PREVIOUS ADDRESS (Street - City - State - Zip) | | PREVIOUS ADDRESS (Street - City - State - Zip) | |
| PURCHASE PRICE OF HOME: $ | PRESENT HOME VALUE: $ | PURCHASE PRICE OF HOME: $ | PRESENT HOME VALUE: $ |
| MORTGAGE BALANCE $ | MONTHLY PAYMENT (MORTGAGE/RENT) $ | MORTGAGE BALANCE $ | MONTHLY PAYMENT (MORTGAGE/RENT) $ |

PLEASE COMPLETE ONLY IF YOU ARE APPLYING FOR JOINT CREDIT, SECURED CREDIT, OR IF YOU LIVE IN A COMMUNITY PROPERTY STATE.
X MARRIED (*WA and CA Only:* includes registered domestic partners)
SEPARATED UNMARRIED (Single - Divorced - Widowed)

PLEASE COMPLETE ONLY IF YOU ARE APPLYING FOR JOINT CREDIT, SECURED CREDIT, OR IF YOU LIVE IN A COMMUNITY PROPERTY STATE.
X MARRIED (*WA and CA Only:* includes registered domestic partners)
SEPARATED UNMARRIED (Single - Divorced - Widowed)

## EMPLOYMENT

| Applicant | | Co-Applicant | |
|---|---|---|---|
| NAME AND ADDRESS OF EMPLOYER FREEPORT MCMORAN Morenci, AZ 85540 | | NAME AND ADDRESS OF EMPLOYER HOMEMAKER | |
| HIRE DATE 3 yrs mths | POSITION SUPPORT EQUIPMENT O | HIRE DATE H yrs mths | POSITION |
| PRIOR EMPLOYER | LENGTH OF EMPLOYMENT | PRIOR EMPLOYER | LENGTH OF EMPLOYMENT |

## INCOME

**OTHER INCOME NOTICE:** Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered.

| Applicant | | Co-Applicant | |
|---|---|---|---|
| EMPLOYMENT INCOME (GROSS) $ 5916.00 PER Month | OTHER INCOME (GROSS) $ PER SOURCE | EMPLOYMENT INCOME (GROSS) $ 0.00 PER Month | OTHER INCOME (GROSS) $ PER SOURCE |
| OTHER INCOME (GROSS) $ PER | SOURCE | OTHER INCOME (GROSS) $ PER | SOURCE |

**OTHER INCOME NOTICE:** Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered.

## REFERENCES

| NAME AND ADDRESS OF NEAREST RELATIVE NOT LIVING WITH YOU | HOME NUMBER / RELATIONSHIP | NAME AND ADDRESS OF NEAREST RELATIVE NOT LIVING WITH YOU | HOME NUMBER / RELATIONSHIP |
|---|---|---|---|
| [redacted] | HOME NUMBER [redacted] RELATIONSHIP [redacted] | [redacted] | HOME NUMBER [redacted] RELATIONSHIP [redacted] |

9012 LASER APPRO FI14947 10-2010

[redacted]



COPYRIGHT 2005 Securian Financial Group, Inc. All rights reserved

[redacted]

| OTHER INFORMATION ABOUT YOU - IF YOU ANSWER "YES" TO ANY QUESTION OTHER THAN #1, EXPLAIN ON AN ATTACHED SHEET. | APPLICANT | OTHER |
|---|---|---|
| 1. ARE YOU A U.S. CITIZEN OR PERMANENT RESIDENT ALIEN? | Yes | Yes |
| 2. DO YOU CURRENTLY HAVE ANY OUTSTANDING JUDGMENTS OR HAVE YOU EVER FILED FOR BANKRUPTCY, HAD A DEBT ADJUSTMENT PLAN CONFIRMED UNDER CHAPTER 13, HAD PROPERTY FORECLOSED UPON OR REPOSSESSED IN THE LAST 7 YEARS, OR BEEN A PARTY IN A LAWSUIT? | No | No |
| 3. IS YOUR INCOME LIKELY TO DECLINE IN THE NEXT TWO YEARS? | No | No |
| 4. ARE YOU A CO-MAKER, CO-SIGNER OR GUARANTOR ON ANY LOAN NOT LISTED ABOVE?<br>FOR WHOM (Name of Others Obligated on Loan): TO WHOM (Name of Creditor): | No | No |

## STATE NOTICES

**OHIO RESIDENTS ONLY:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**WISCONSIN RESIDENTS:** Marital Status: Married Unmarried Legally Separated

If married: the name of my spouse is ____________________

Spouse's SSN: ____________________ Spouse's Address (if different) ____________________

**Notice:** No provision of any marital property agreement, unilateral statement under Section 766.59, or court decree under Section 766.70 will adversely affect the rights of the Credit Union unless the Credit Union is furnished a copy of the agreement, statement or decree, or has actual knowledge of its terms, before the credit is granted or the account is opened.

**MARRIED WISCONSIN RESIDENTS APPLYING FOR AN INDIVIDUAL ACCOUNT:** By signing here, I state that the credit being applied for, if granted, will be incurred in the interest of the marriage or family of the Borrower(s). X ____________________

## LOAN APPLICATION SIGNATURES

**PLEASE READ BEFORE SIGNING:**

All the information in this application is true. I understand that section 1014 Title 18 U.S. Code makes it a federal crime to knowingly make a false statement on this application. You have my permission to check it. You may retain this application even if not approved. I understand that you may receive information from others about my credit and you may answer questions and requests from others seeking credit or experience information about me or my accounts with you. If this application is approved, I agree to honor the provisions of the credit or loan agreement and security agreement covering my account or loan. (If this application is for two of us, this statement applies to both of us.)

**Credit Report Authorization.** By signing this Application, I authorize you to obtain my credit report for the purposes of evaluating this application and to obtain subsequent credit reports on an on-going basis in connection with this transaction, and for all other legitimate purposes, such as reviewing my accounts or taking collection action on the account.

***Vermont Residents:*** Applicant provided consent via phone ______________ (Credit Union Initials)

IMPORTANT NOTICE ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for me: When I open an account, you will ask for my name, address, date of birth, and other information that will allow you to identify me. You may also ask to see my driver's license or other identifying information.

| SIGNATURE OF APPLICANT | DATE | SIGNATURE OF CO-APPLICANT | DATE |
|---|---|---|---|
| X [signature] | 3-28-14 | X Tiffany [signature] | 3-28-14 |

HAVE YOU OMITTED ANYTHING? REMEMBER: INCOMPLETE APPLICATIONS CANNOT BE PROCESSED.

# Agreement to Provide Insurance

To: Arizona State Credit Union
PO Box 791330
San Antonio, TX 78279
Phone: (866) 910-8507
Fax: (866) 896-3654

I UNDERSTAND THAT THE VEHICLE LISTED BELOW MUST BE COVERED UP TO THE MAXIMUM DEDUCTIBLES ($1000) AND BY BOTH 1) COLLISION AND 2) COMPREHENSIVE COVERAGES, OR FIRE AND THEFT AND COMBINED ADDITIONAL COVERAGES. INSURANCE MAY BE OBTAINED FROM A COMPANY OF YOUR CHOICE.

**My present insurance coverage includes the required coverage. I will MAINTAIN CONTINUOUS INSURANCE** through the insurance company shown below, requesting my agent to note the Lienholder's interest in the vehicle and endorse the policy with a loss payable endorsement in favor of the Lienholder.

| Year | Make | Model | Body | VIN |
|---|---|---|---|---|
| 2005 | Nissan | Armada | SE Sport Utility 4D | 5N1AA08A65N736249 |

**PURCHASER**

App ID [redacted]
Member # [redacted]

DANIEL J PENA
2135 N SOCHI LN
SAFFORD AZ 85546

**INSURANCE AGENT**

ANN BIXLER

**INSURANCE COMPANY**

SF MUTUAL

Policy or Binder # [redacted]

Deductible$ 500.00

Policy Expiration Date: 09/25/2014

Member signature (required) — Date 3-28-14

## Installment Sales Contract / Loan GAP Plus Waiver Addendum - Electronic Form

**"Please carefully review all of the terms and conditions of the GAP Waiver Addendum prior to signing."**

| | |
|---|---|
| Borrower: **DANIEL J PENA** Account Number: [redacted] | Seller/Lender: **Arizona State Credit Union** App ID: [redacted] |
| Borrower Address: **2135 N SOCHI LN** | Seller/Lender Address: **2355 W Pinnacle Peak Rd** |
| City State Zip: **SAFFORD, AZ 85546** | City State Zip: **Phoenix, AZ 85027** |

| | | | |
|---|---|---|---|
| Collateral Year: **2005** | Make: **Nissan** | Model: **Armada** | GAP Waiver Date: **3/28/2014** Loan Officer: [redacted] |
| Collateral ID Number (VIN): **5N1AA08A65N736249** | | | Loan Date: **03/28/2014** Amount Financed: **$ 12,752.95** |
| MSRP/KBB: **$ 12,545.00** | Mileage: **112,527** | | Term in Months: **52** APR: **4.20%** Payment: **$293.29** |

[X] **YES, you elect the GAP Waiver.**

**You understand that the purchase of the GAP Waiver Addendum is voluntary and not required by the Seller/Lender to obtain credit.** You understand that this GAP Waiver Addendum is not an offer of insurance coverage. You understand that by purchasing the GAP Waiver Addendum for your installment sales contract or loan that the Seller/Lender waives, in the event of a Constructive Total Loss, its contractual right to hold you liable for the GAP Amount, subject to the provisions and exclusions identified on this election form. You will remain fully liable to the Lender for any portion of the unpaid net balance that is not waived by this GAP Waiver Addendum. You understand that this GAP Waiver Addendum is not a substitute for collision or property damage insurance. You understand that the Seller/Lender may retain all of the one-time fee, or pay a portion to a third party as a service fee, or for indemnification.

**The one-time fee is: $ <u>$389.00</u> (please see Cancellation/Refunds on reverse)**
**GAP Plus Waiver is $1000 (please see details on reverse)**

Signature: [signature] Date: 3/28/14

Signature: Tiffany Pena Date: 3-28-14

This Waiver **does not** include:

1. Any refundable additions to amount financed including such items as service contracts, warranties, insurance, or other items.
2. **Interest Accrued after the Date of Loss.**
3. Delinquent Payments > 60 Days Past Due.
4. Late charges, fees, extensions and/or funds added after installment sales contract/loan inception.
5. Primary Insurance deductible in excess of $1,000*
6. Portion of installment sales contract/loan at loan inception date that exceeds 150% of MSRP (new vehicles) or 150% of KBB average retail value (used vehicles).
7. More than one (1) Skip-a-Payment extension per year and no more than two (2) total over the term of the loan.
8. **Losses that occur more than 84 months after the loan inception date.**

*The Primary Insurance deductible is waived only to the extent it is part of the "GAP Amount".

[ ] **No, you do not elect the GAP Waiver.**

In the event your vehicle is stolen or a total loss and your insurance company pays less than the unpaid net balance of your installment sales contract/loan, you understand that you will be fully responsible for any deficiency balance.

Signature ____________ Date ____________

Signature ____________ Date ____________

# Installment Sales Contract / Loan GAP Plus Waiver Addendum - Electronic Form

## TERMS AND CONDITIONS OF THE GAP WAIVER ADDENDUM

This GAP Waiver Addendum is incorporated into and supplements the terms of the Installment Sales Contract/Loan. By electing this GAP Waiver Addendum, the Debtor agrees to the terms below and on the reverse side, which are incorporated by reference into this Addendum.

## DEFINITIONS

For the purposesof this Installment Sales Contract/Loan GAP Waiver Addendum, the following words are defined and their meanings will be as follows:
**"We", "us", and "our" refer to the seller/lender: "you" and "your" means the borrower/debtor/buyer.**
**"GAP Amount"** means the difference between the primary carrier's physical damage insurance payments, including any tax and fee refunds applied, for a Construction Total Loss or, if uninsured, the collateral's Actual Cash Value and the Unpaid Net Balance of the installment sales contract/loan as of the Date of Loss. If you are entitled to collect the same from others, including but not limited to, primary and other insurance, or salvage sale, that portion of the payment will not be covered in the GAP settlement. GAP does not cover deductions made by the primary insurance carrier for prior damage that has already been paid to you or due to prior salvaged title. Amount waived shall not exceed $50,000 in total.

**"Constructive Total Loss"** means the direct and accidental damage to or theft of the Collateral which meets one of these criteria: 1) Either the total cost to repair the Collateral is greater than or equal to the ACV of the Collateral immediately prior to the date of Loss; or 2) The Collateral is stolen and is not recovered within thirty (30) days from the date a police report is filed.

**"Actual Cash Value (ACV)"** means the retail value of the Collateral, on the Date of Loss, as listed in the Kelley Blue Book (KBB) Guide for the territory in which the Collateral is principally garaged and with appropriate adjustments for mileage or optional equipment. For any Collateral which has no KBB Retail Value available, ACV will be determined using the best information available to us which we reasonably believe accurately reflects the retail value of the collateral and is customarily used as the basis for establising ACV in that territory.

**"Primary Insurance"** means in force insurance coverage, required by us, and carried by you to protect the covered collateral from collision and comprehensive loss, naming us as Loss Payee or Lien holder. Provides liability coverage to any person who has caused the Borrower's collateral to incur a Constructive Total Loss, and for which that person is legally liable. Additionally, primary insurance shall be any other coverage we may have protecting our interest in the covered collateral, insuring at least the ACV of the Collateral, contingent upon the failure or absence of primary insurance coverage.

**"Unpaid Net Balance"** means the amount owed by you to clear the outstanding installment sales contract/loan account upon the date of loss. This amount shall not include any unearned finance charges or interest; installment sales contract/loan charges; late charges; deferred payment; any delinquent payments; any uncollected service charges; refundable prepaid taxes and fees; or any other proceeds you may duly recover by canceling insurance coverages; service contracts; warranties, disposition fees, termination fees, penalty fees, or other items built into or added to the initial installment sales contract/loan balance.

**"Delinquent Payments"** means any payment, as described in the installment sales contract/loan instrument, which remains unpaid for a period of more than sixty (60) days after the due date stated in the installment sales contract/loan instrument. The definition does not include approved deferred payments for Lender programs (i.e. "Skip-a-payment, "Skip-your-Christmas-Payment", etc.) as listed in item 7 on the reverse side.

**"Multiple Collateral"** If two or more pieces of covered collateral are secured under the installment sales contract/loan agreement, we will not pay more than a proportionate share of the total unpaid net balance that each piece of covered collateral represents to the total loan.

## INSTALLMENT SALES CONTRACT/LOAN GAP WAIVER ADDENDUM

In consideration for the payment of the cost shown on the reverse side of this form, we will waive the GAP Amount due to a Constructive Total Loss to the collateral shown on the reverse side of this form. The deductible is waived only to the extent it is part of the "GAP Amount". Our maximum waiver shall be the GAP Amount including, if the collateral is protected by primary insurance, up to $1,000 for the primary insurance deductible. If the collateral is not protected by primary insurance, we will waive only the GAP Amount obtained by subtracting the ACV of the covered collateral from the unpaid net balance and you will remain responsible for the ACV of the collateral. We will not waive the portion of the unpaid net balance attributable to the original installment sales contract/loan amount exceeding 150% of the Manufacturer's Suggested Retail Price (MSRP) on new vehicles, or 150% of KBB average retail book value on used vehicles, including all refundable items such as service contracts, warranties, insurance, or other such items. **GAP Plus Waiver:** In the event that the covered collateral is deemed a Constructive Total Loss, you may be eligible to receive an additional waiver from us, in the amount shown on the reverse side of this form. **In order for you to receive this additional waiver, you must finance your replacement vehicle with us within ninety (90) days from the date the vehicle is determined to be a Total Loss. The GAP Plus Waiver has no cash value and will only be paid by us in the form of a waiver towards the amount financed of your replacement vehicle.**

## CANCELLATION/REFUNDS

This GAP Waiver Addendum may be canceled for a full refund within sixty (60) days of the Origination Date for any reason. However, in the event of a Constructive Total Loss of the covered Vehicle, the GAP Waiver Addendum fee will be deemed as fully earned and therefore, no refund will be due. **This Installment Sales Contract/Loan GAP Waiver Addendum is fully earned and non-refundable after sixty (60) days from the Origination Date, unless otherwise required by applicable state regulations. This Addendum shall automatically terminate and without prior notice terminate concurrently with the termination of the Loan agreement for Collateral or sale of Collateral.**

## ELIGIBILITY REQUIREMENTS, CONDITIONS AND EXCLUSIONS

There are Eligibility requirements, Conditions and Exclusions that could prevent you from receiving benefits under the GAP Waiver Addendum. Please review the following (14) fourteen Exclusions and the (7) seven Exclusions listed on the reverse side of the Addendum. This GAP Waiver does not apply when the Constructive Total Loss is: (1) **due to losses occurring prior to the GAP Waiver effective date;** (2) due to dishonest, fraudulent, criminal, or illegal act, including forgery by the Borrower; (3) due to wear and tear, gradual deterioration, rust, corrosion, or resulting from any repairing, restoration, or remodeling, or resulting from any structural, mechanical or electrical breakdown or failure; (4) due to nuclear action or reaction, radiation or radioactive contamination; (5) due to war, whether or not declared, invasion, civil war, insurrection, rebellion or revolution or any consequence of these; (6) due to confiscation of Collateral by a government body or public official; (7) caused by theft of Collateral , unless the Borrower or the Lender files a police report; (8) resulting from the Collateral being operated, used or maintained in any race, speed contest, or other contest; (9) to a vehicle that is part of a fleet that is intended for use as a public or livery conveyance, or any vehicle with commercial use; (10) is to a vehicle with a **"salvage"** title; (11) **caused intentionally by the borrower;** (12) due to conversion, embezzlement or secretion by any person in lawful possession of the covered collateral; (13) to other than the standard or optional equipment available from the manufacturer of the covered collateral; (14) sustained outside of the United States of America, its territories or possessions, Canada, the Republic of Mexico or is being transported between parts thereof.

## NOTICE OF LOSS

You must notify us within 365 days of receiving final settlement from the primary or third party insurance carrier and provide the following: (a) copy of the insurance settlement, (b) verification of the insurance deductible, (c) copy of police report in the case of an unrecovered theft. Failure to comply with the above time frame requirements shall result in the denial of GAP Waiver Addendum benefits.

**IMPORTANT NOTICE**

**You are solely responsible for the payment of any and all Taxes you may owe due to the discharge of your debt under this Addendum. You may wish to consult with a tax professional. You are reminded that this GAP Waiver is not an insurance policy. All provisions within this Waiver are subject to state specific regulations.**

Arizona STATE CREDIT UNION

One State Of Mind

March 28, 2014

## Authorization for Payoff

App ID: [redacted]

To Whom It May Concern:

| |
|---|
| I, hereby authorize **Arizona State Credit Union** to payoff my loan account number [redacted] |

Please release the title and/or lien clearance for the following collateral:

**2005 Nissan Armada 5N1AA08A65N736249**

And forward it to: **Arizona State Credit Union**
**2355 W Pinnacle Peak Road**
**Phoenix, AZ 85027**

| | | | |
|---|---|---|---|
| Payoff: **HUGHES FEDERAL CR UN** | | Account: | [redacted] |
| **PO BOX 11900** | **Tucson, AZ 85734** | Amount: | **$ 12,334.95** |

| |
|---|
| Creditor Phone Number: **520-749-8341** |

Signature: Tiffany Pena

Date: 3-28-14

# EXHIBIT B

Fill in this information to identify your case:

Debtor 1 DANIEL J PENA
First Name Middle Name Last Name

Debtor 2 TIFFANY D PENA
(Spouse, if filing) First Name Middle Name Last Name

United States Bankruptcy Court for the: District of ARIZONA (State)

Case number (If known) 4:16-bk-01533

# Official Form 427

## Cover Sheet for Reaffirmation Agreement

12/15

**Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.**

## Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?**
ARIZONA STATE CREDIT UNION
Name of the creditor

**2. How much is the debt?**
On the date that the bankruptcy case is filed $ 14,430.19
To be paid under the reaffirmation agreement $ 14,231.80
$ 269.54 per month for 61 months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**
Before the bankruptcy case was filed 5.45 %
Under the reaffirmation agreement 5.45 % ☒ Fixed rate ☐ Adjustable rate

**4. Does collateral secure the debt?**
☐ No.
☒ Yes. Describe the collateral. 2013 CHEVROLET CRUZE
Current market value $ 12,521.00

**5. Does the creditor assert that the debt is nondischargeable?**
☒ No.
☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from *Schedule I: Your Income* (Official Form 106I) and *Schedule J: Your Expenses* (Official Form 106J), fill in the amounts.**

| Income and expenses reported on Schedules I and J | | Income and expenses stated on the reaffirmation agreement | |
|---|---|---|---|
| 6a. Combined monthly income from line 12 of Schedule I | $ 5,264.20 | 6e. Monthly income from all sources after payroll deductions | $ 5,364.10 |
| 6b. Monthly expenses from line 22c of Schedule J | − $ 5,523.00 | 6f. Monthly expenses | − $ 5,523.00 |
| 6c. Monthly payments on all reaffirmed debts not listed on Schedule J | − $ 0 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses | − $ 0 |
| **6d. Scheduled net monthly income** Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets. | $ (158.80) | **6h. Present net monthly income** Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets. | $ (159.80) |

Debtor 1 DANIEL J PENA
First Name Middle Name Last Name

Case number (if known) 4:16-bk-01533

Debtor 2 TIFFANY D PENA
First Name Middle Name Last Name

Case number (if known) 4:16-bk-01533

| | |
|---|---|
| 7. Are the income amounts on lines 6a and 5e different? | ☒ No.<br>☐ Yes. Explain why they are different and complete line 10. |
| 8. Are the expense amounts on lines 6b and 5f different? | ☒ No.<br>☐ Yes. Explain why they are different and complete line 10. |
| 9. Is the net monthly income in line 6h less than 0? | ☐ No.<br>☒ Yes. A presumption of hardship arises (unless the creditor is a credit union). Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.<br>Creditor [redacted] is a credit union |
| 10. Debtor's certification about lines 7-9<br>If any answer on lines 7-9 is Yes, the debtor must sign here.<br>If all the answers on lines 7-9 are No, go to line 11. | I certify that each explanation on lines 7-9 is true and correct.<br>X [signature] Signature of Debtor 1<br>X [signature] Signature of Debtor 2 (Spouse Only in a Joint Case) |
| 11. Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☐ No.<br>☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>☐ No<br>☐ Yes |

## Part 2: Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.

X [signature] Date 8/11/16
Signature MM / DD / YYYY

ANGEL MIRAMONTES
Printed Name

Check one:
☐ Debtor or Debtor's Attorney
☒ Creditor or Creditor's Attorney

Check one.
☐ Presumption of Undue Hardship
☒ No Presumption of Undue Hardship
*See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
**District of ARIZONA**

In re DANIEL J PENA
TIFFANY D PENA,
*Debtor(s)*

Case No. 4:16-bk-01533

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** ARIZONA STATE CREDIT UNION

☒ Check this box if Creditor is a Credit Union

## I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this Reaffirmation Documents packet.**

1. Brief description of the original agreement being reaffirmed: 2013 CHEVROLET CRUZE
*For example, auto loan*

2. ***AMOUNT REAFFIRMED:*** $14,231.60

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before the date you sign this Reaffirmation Agreement.

*See the definition of "Amount Reaffirmed" in Part V.C below.*

3. The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is 5.45%.

*See definition of "Annual Percentage Rate" in Part V.C below.*

This is a *(check one)* ☒ Fixed rate ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

4. Reaffirmation Agreement Repayment Terms:

☒ If fixed term, $269.54 per month for 61 months starting on 4/10/2016.

☐ If not fixed term, describe repayment terms: ______

5. Describe the collateral, if any, securing the debt:

| | |
|---|---|
| Description: | 2013 CHEVROLET CRUZE |
| Current Market Value | $12,521.00 |

6. Did the debt that is being reaffirming arise from the purchase of the collateral described above?

☒ Yes ☐ No

If yes, what was the purchase price for the collateral? $18,789.31
If no, what was the amount of the original loan? $______

7. Detail the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

| | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $14,430.19 | $14,231.60 |
| Annual Percentage Rate | 5.45% | 5.45% |
| Monthly Payment | $269.54 | $269.54 |

8. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit: ______

## II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

1. Were you represented by an attorney during the course of negotiating this agreement?

Check one. ☒ Yes ☐ No

2. Is the creditor a credit union?

Check one. ☒ Yes ☐ No

3. If your answer to EITHER question 1. or 2. above is "No" complete a. and b. below.

a. My present monthly income and expenses are:

i. Monthly income from all sources after payroll deductions (take-home pay plus any other income) $__________

ii. Monthly expenses (including all reaffirmed debts except this one) $__________

iii. Amount available to pay this reaffirmed debt (subtract ii. from i.) $__________

iv. Amount of monthly payment required for this reaffirmed debt $__________

*If the monthly payment on this reaffirmed debt (line iv.) is greater than the amount you have available to pay this reaffirmed debt (line iii.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

b. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or on me because:

Check one of the two statements below, if applicable:

☐ I can afford to make the payments on the reaffirmed debt because my monthly income is greater than my monthly expenses even after I include in my expenses the monthly payments on all debts I am reaffirming, including this one.

☐ I can afford to make the payments on the reaffirmed debt even though my monthly income is less than my monthly expenses after I include in my expenses the monthly payments on all debts I am reaffirming, including this one, because: __________

______________________________________________________________________

Use an additional page if needed for a full explanation.

4. If your answers to BOTH questions 1. and 2. above were "Yes," check the following statement, if applicable:

☒ I believe this reaffirmation agreement is in my financial interest and I can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I (We) hereby certify that:

i. I (We) agree to reaffirm the debt described above.

ii. Before signing this reaffirmation agreement, I (we) read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

iii. The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

iv. I am (We are) entering into this agreement voluntarily and fully informed of my (our) rights and responsibilities; and

v. I (We) have received a copy of this completed and signed Reaffirmation Documents packet.

SIGNATURE(S):

Date 5-27-16 Signature ____________ *Debtor*

Date 5-27-16 Signature ____________ *Joint Debtor, if any*

If a joint reaffirmation agreement, both debtors must sign.

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor ARIZONA STATE CREDIT UNION 2355 W PINNACLE PEAK RD PHOENIX, AZ 85027
*Print Name* *Address*

ANGEL MIRAMONTES ____________ 8/11/16
*Print Name of Representative* *Signature* *Date*

## IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☒ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 5/24/16 Signature of Debtor's Attorney ____________

Print Name of Debtor's Attorney BENJAMIN JOSEPH WRIGHT

# RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

Dealer Number ____________ Contract Number ____________

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| DANIEL J PENA<br>1135 N SOCHI LANE PO BOX 995<br>SAFFORD AZ 85548 | TIFFANY D PENA<br>1135 N SOCHI LANE PO BOX 995<br>SAFFORD AZ 85548 | KEMPTON CHEVROLET BUICK LTD.<br>715 5TH STREET<br>SAFFORD AZ 85546- |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2013 | CHEVROLET CRUZE | 10745 | 1G1PJ5SB9D7240516 / | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural ☐ N/A |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 0.00 |
|---|---|---|---|---|
| 5.45 % | $ 3852.05 | $ 18789.31 | $ 22641.36 | $ 22641.36 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 84 | 269.54 | Monthly beginning 03/10/2014 |
| N/A | N/A | N/A |

Or As Follows: N/A

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.
If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:

**Optional Credit Insurance**

☐ Credit Life ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:
Credit Life $ N/A
Credit Disability $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. [illegible]

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1 Cash Price | | |
| A Cash Price of Motor Vehicle (including accessories, services) | $ 16531.00 | |
| B Sales Tax | $ 1173.85 | |
| C Prior Credit or Lease Balance paid to N/A | $ N/A | |
| D Other DEALER DOCUMENTARY FEE | $ 99.00 | |
| E Other N/A | $ N/A | |
| F Other N/A | $ N/A | |
| G Other N/A | $ N/A | |
| H Other N/A | $ N/A | |
| Total Cash Price (A through H) | | $ 17803.85 (1) |
| 2 Total Downpayment = Trade-In N/A | | |
| Gross Trade-In Allowance | $ N/A | |
| Less Pay Off Made By Seller | $ N/A | |
| Equals Net Trade In | $ N/A | |
| + Cash | $ N/A | |
| + Other N/A | $ N/A | |
| (If total downpayment is negative, enter "0" and see prior credit or lease balance, item 1C above) | | $ N/A (2) |
| 3 Unpaid Balance of Cash Price (1 minus 2) | | $ 17803.85 (3) |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts): | | |
| A Cost of Optional Credit Insurance Paid to the Insurance Company or Companies. Life $ N/A Disability $ N/A | $ N/A | |
| B Other Optional Insurance Paid to Insurance Company or Companies | $ N/A | |
| C Optional Gap Contract | $ 599.00 | |
| D Official Fees Paid to Government Agencies | $ N/A | |
| E Government Taxes Not Included in Cash Price | $ N/A | |
| F Government License and/or Registration Fees | $ 380.46 | |
| G Government Certificate of Title Fees | $ 4.00 | |
| H Other Charges (Seller must identify who is paid and describe purpose) | | |
| N/A N/A | $ N/A | |
| N/A N/A | $ N/A | |
| N/A N/A | $ N/A | |
| N/A N/A | $ N/A | |
| N/A N/A | $ N/A | |
| N/A N/A | $ N/A | |
| N/A N/A | $ N/A | |
| N/A N/A | $ N/A | |
| N/A N/A | $ N/A | |
| N/A N/A | $ N/A | |
| Total Other Charges and Amounts Paid to Others on Your Behalf | | $ 983.46 (4) |
| 5 Amount Financed (3 + 4) | | $ 18789.31 (5) |

If the "Amount Financed" exceeds $10,000 or if the motor vehicle is primarily for commercial use, the "Amount Financed" is also the "Final Cash Price Balance" and the "Total of Payments" is also the "Time Balance".

**Other Optional Insurance**

☐ N/A Type of Insurance N/A Term
Premium $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

☐ N/A Type of Insurance N/A Term
Premium $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

N/A Buyer Signature N/A Date
N/A Co-Buyer Signature N/A Date

**Returned Check Charge:** You agree to pay a charge of $25.00, plus actual charges assessed by a financial institution, if any check you give us is dishonored.

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4C of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term 84 Mos.
CNA NATIONAL GAP
Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X [signature]

Agreement to Arbitrate: By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X [signature]
Co-Buyer Signs X [signature]

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before N/A, Year N/A SELLER'S INITIALS N/A

### FOR USED VEHICLES ONLY

**The Seller hereby warrants that this vehicle will be fit for the ordinary purposes for which the vehicle is used for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. You (the purchaser) will have to pay up to $25.00 for each of the first two repairs if the warranty is violated.**

**ATTENTION PURCHASER: SIGN HERE ONLY IF THE DEALER TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM(S) AND THAT YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:**
**ATENCIÓN COMPRADOR: FIRME AQUÍ SOLAMENTE SI EL VENDEDOR LE HA DICHO QUE EL VEHÍCULO TIENE EL/LOS SIGUIENTE(S) PROBLEMA(S) Y QUE USTED ESTÁ DE ACUERDO EN COMPRAR EL VEHÍCULO BAJO ESTOS TÉRMINOS:**

N/A ____________ N/A ____________ N/A ____________

N/A ____________ N/A (Date) N/A ____________ N/A (Date)
Buyer Signs Co-Buyer Signs

### WARRANTIES

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties on the vehicle, except as described above for used vehicles. Making no warranties means that the Seller is selling the vehicle as is – not expressly warranted or guaranteed and without any implied warranties of merchantability (except as described above) or of fitness for a particular purpose.**
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

☐ **IF THE BOX IS CHECKED, THIS CONTRACT IS SUBJECT TO A BROKER FEE PAID BY THE SELLER TO** N/A

### NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

You acknowledge an express intent to grant a security interest in the vehicle and hereby waive and abandon all personal property exemptions granted upon the vehicle, which is the subject of this contract. **NOTICE: BY GIVING US A SECURITY INTEREST IN THE VEHICLE, YOU WAIVE ALL RIGHTS PROVIDED BY LAW TO CLAIM SUCH PROPERTY EXEMPT FROM PROCESS.**

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X [signature] Co-Buyer Signs X [signature]
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

**NOTICE TO THE BUYER: (1) Do not sign this contract before you read it or if it contains any blank spaces. (2) You are entitled to an exact copy of the contract you sign.**

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON THE REVERSE SIDE, BEFORE SIGNING BELOW.**

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.**

**ANY INSURANCE REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE LIABILITY COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS.**

**The Arizona Department of Financial Institutions regulates the Seller and can be contacted at 2910 North 44th Street, Suite 310, Phoenix, Arizona 85018, (602) 255-4421, if you have any complaints concerning this contract.**

X [signature] 02/08/2014 Buyer Signs Date
X Tiffany D. Pena 02/08/2014 Co-Buyer Signs Date

KEMPTON CHEVROLET BUICK LTD. 02/08/2014 Seller Signs Date
By X [signature] Title

**SEE BACK FOR OTHER IMPORTANT TERMS AND AGREEMENTS.**

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here N/A Address

Seller assigns its interest in this contract to 2355 WEST PINNACLE PEAK RD PHOENIX AZ 85027 ARIZONA STATE CREDIT UNION (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse ☐ Assigned without recourse ☐ Assigned with limited recourse

KEMPTON CHEVROLET BUICK LTD.
Seller By [signature] Title [signature]

LAW FORM NO. 553-AZ-ARB [illegible]

ORIGINAL LIENHOLDER

## OTHER IMPORTANT AGREEMENTS

**1. FINANCE CHARGE AND PAYMENTS**

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed with a day counted as 1/365th of a year (or 1/366th in a leap year).

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**2. YOUR OTHER PROMISES TO US**

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

d. **Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the cost of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, we will subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
- You do not pay any payment on time;
- You give us false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **Debtor's Liability for Failure to Return Vehicle:** If you are in default we may send you a notice of default. It is unlawful to fail to return a motor vehicle subject to a security interest within 30 days after receiving notice of default. A notice of default may be mailed to the address on the contract. It is your responsibility to keep the listed address current. Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony. Assuming there are no aggravating circumstances, and you have no prior felony convictions, the maximum penalty is 1.5 years in prison and a $150,000 fine.

d. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. You will also pay any reasonable collection costs we incur as the law allows.

e. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

f. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

g. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

h. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

**5. Servicing and Collection Contacts.**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**6. Applicable Law**
Federal law and the law of the state of the Seller's address shown on the front of this contract apply to this contract.

**7. SELLER'S RIGHTS IN ABSENCE OF CREDIT APPROVAL:**
(a) You agree to furnish us any documentation necessary to verify information contained in the credit application. (b) You acknowledge that it may take a few days for us to verify your credit and assign this contract. In consideration of our agreeing to deliver the vehicle, you agree that if we are unable to assign the contract to any one of the financial institutions with which we regularly do business pursuant to terms of assignment acceptable to us, we may cancel this contract. (c) In the event we cancel this contract, we shall give you notice of the cancellation. Upon delivery of such notice, you shall immediately return the vehicle to us in the same condition as when sold reasonable wear and tear excepted. We agree, upon cancellation of this contract to restore to you all consideration we received in connection with the contract, including any trade-in vehicle. (d) In the event the vehicle is not immediately returned to us upon notice of our cancellation of this contract, you agree to pay and shall be liable to us for all expenses incurred by us, and we shall have the right to repossess the vehicle with free right of entry wherever the vehicle may be found, as the law allows. (e) While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle shall be in full force and all risk of loss or damage to the vehicle shall be assumed by you, you shall pay all reasonable repair costs related to any damage sustained by the vehicle while in your possession or control of and until the vehicle is returned to us.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**GUARANTY**

The undersigned, jointly and severally, guarantee payment of all amounts owing under the contract and the payment upon demand of the entire amount owing on the contract in the event of default in payment by Buyer named therein. The undersigned waives notice of acceptance, demands for performance, notice of non-performance, protests, notice of protests, notice of dishonor, notice of acceptance of this Guaranty, of any extensions in time of payment, of sale of any of the collateral and of all other notices to which the undersigned would be otherwise entitled by law and agrees to pay all amounts owing thereunder upon demand, without requiring any action or proceeding against Buyer, and specifically waives any right to require action against Buyer as provided in A.R.S. §§ 12-1641 et seq. The undersigned agree to deliver to Seller or, after assignment, to Assignee timely financial statements and any other information relating to the undersigned's financial condition as may be reasonably requested. The undersigned acknowledges receipt from the Seller, prior to signing below, of a separate "Notice to Cosigner."

DATED AT ______________________ GUARANTOR ______________________

DATED AT ______________________ GUARANTOR ______________________

Marital Community Property Joinder: The undersigned spouse of the Guarantor joins in the execution of this guaranty for the purpose of binding the marital property of the Guarantor and the undersigned, in accordance with A.R.S. § 25-214 or other applicable law. THE UNDERSIGNED SPOUSE OF THE GUARANTOR ACKNOWLEDGES RECEIPT FROM THE SELLER, PRIOR TO SIGNING BELOW, OF A SEPARATE "NOTICE TO COSIGNER."

______________________ Date ______________________ Spouse of the Guarantor

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

# LOAN APPLICATION

**Arizona State Credit Union**
2355 W Pinnacle Peak Road
Phoenix, AZ 85027

Married Applicants may apply for a separate account. Check the appropriate box to indicate Individual Credit or Joint Credit.

☐ **Individual Credit:** Complete **Applicant** sections if only the applicant's income is considered for loan approval.
Complete **Applicant** and **Co-Applicant** sections: (1) if you are relying on income from alimony, child support, or separate maintenance or on the income or assets of another person as the basis for repayment of credit requested, or; (2) if you reside in a Community Property State, or; (3) if you are relying on property located in a Community Property State as a basis for repayment of the credit requested. Community Property States include: AK, AZ, CA, ID, LA, NM, NV, TX, WA, WI.

☒ **Joint Credit:** Complete **Applicant** and **Co-Applicant** sections if your co-applicant will be contractually liable for repayment of the loan and initial below:
We intend to apply for joint credit. DP (Applicant Initials) TP (Co-Applicant Initials)

***PLEASE CHECK BELOW TO INDICATE THE TYPE OF ACCOUNT(S) AND TYPE OF CREDIT FOR WHICH YOU ARE APPLYING.***

☐ **Account/Loan:** ☐ Individual ☒ Joint
*(Including ATM/Debit Card Access to the Account if Available)*

Amount Requested $

Purpose/Collateral: Auto

☐ Other Loan Request

**Repayment:** ☐ Payroll Deduction ☐ Billing Notice ☐ Automatic Payment ☐ Web Pay ☐ Other

| APPLICANT | | ☐ CO-APPLICANT ☐ NON-APPLICANT SPOUSE/OTHER ☐ GUARANTOR | |
|---|---|---|---|
| NAME (Last - First - Initial): Pena Daniel J | ACCOUNT NUMBER | NAME (Last - First - Initial): Pena Tiffany D | ACCOUNT NUMBER |
| [redacted] | MOTHER'S MAIDEN NAME | SOCIAL SECURITY NUMBER | MOTHER'S MAIDEN NAME |
| E-MAIL ADDRESS | FAX NUMBER | E-MAIL ADDRESS | FAX NUMBER |
| BIRTH DATE [redacted] / HOME PHONE | BUSINESS PHONE/EXT. | BIRTH DATE / HOME PHONE: 〃 | BUSINESS PHONE/EXT. |
| PRESENT ADDRESS (Street - City - State - Zip): 2135 N Sochi Ln Safford, Az 85546 | ☒ OWN ☐ RENT; YEARS/MONTHS AT THIS ADDRESS: 3 | PRESENT ADDRESS (Street - City - State - Zip): 〃 | ☒ OWN ☐ RENT; YEARS/MONTHS AT THIS ADDRESS: 3 |
| PREVIOUS ADDRESS (Street - City - State - Zip) | | PREVIOUS ADDRESS (Street - City - State - Zip) | |
| PURCHASE PRICE OF HOME: $ | PRESENT HOME VALUE: $ | PURCHASE PRICE OF HOME: $ | PRESENT HOME VALUE: $ |
| MORTGAGE BALANCE $ | MONTHLY PAYMENT (MORTGAGE/RENT) $ 441 | MORTGAGE BALANCE $ | MONTHLY PAYMENT (MORTGAGE/RENT) $ 〃 |
| PLEASE COMPLETE ONLY IF YOU ARE APPLYING FOR JOINT CREDIT, SECURED CREDIT, OR IF YOU LIVE IN A COMMUNITY PROPERTY STATE. ☐ MARRIED (*WA and CA Only:* includes registered domestic partners) ☐ SEPARATED ☐ UNMARRIED (Single - Divorced - Widowed) | | PLEASE COMPLETE ONLY IF YOU ARE APPLYING FOR JOINT CREDIT, SECURED CREDIT, OR IF YOU LIVE IN A COMMUNITY PROPERTY STATE. ☐ MARRIED (*WA and CA Only:* includes registered domestic partners) ☐ SEPARATED ☐ UNMARRIED (Single - Divorced - Widowed) | |

**EMPLOYMENT**

| | | | |
|---|---|---|---|
| NAME AND ADDRESS OF EMPLOYER: FreeportMcMoran | | NAME AND ADDRESS OF EMPLOYER: Homemaker | |
| HIRE DATE | POSITION | HIRE DATE | POSITION |
| PRIOR EMPLOYER | LENGTH OF EMPLOYMENT: 3yrs | PRIOR EMPLOYER | LENGTH OF EMPLOYMENT |

**INCOME**

**OTHER INCOME NOTICE:** Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered.

| | | | |
|---|---|---|---|
| EMPLOYMENT INCOME (GROSS) $ 5916 PER Month | OTHER INCOME (GROSS) $ PER SOURCE | EMPLOYMENT INCOME (GROSS) $ PER | OTHER INCOME (GROSS) $ PER SOURCE |
| OTHER INCOME (GROSS) $ PER | SOURCE | OTHER INCOME (GROSS) $ PER | SOURCE |

**REFERENCES**

| | | | |
|---|---|---|---|
| NAME AND ADDRESS OF NEAREST RELATIVE NOT LIVING WITH YOU | HOME NUMBER / RELATIONSHIP | NAME AND ADDRESS OF NEAREST RELATIVE NOT LIVING WITH YOU | HOME NUMBER / RELATIONSHIP |


COPYRIGHT 2005 Securian Financial Group, Inc. All rights reserved

| OTHER INFORMATION ABOUT YOU - IF YOU ANSWER "YES" TO ANY QUESTION OTHER THAN #1, EXPLAIN ON AN ATTACHED SHEET. | APPLICANT | OTHER |
|---|---|---|
| 1. ARE YOU A U.S. CITIZEN OR PERMANENT RESIDENT ALIEN? | Yes | Yes |
| 2. DO YOU CURRENTLY HAVE ANY OUTSTANDING JUDGMENTS OR HAVE YOU EVER FILED FOR BANKRUPTCY, HAD A DEBT ADJUSTMENT PLAN CONFIRMED UNDER CHAPTER 13, HAD PROPERTY FORECLOSED UPON OR REPOSSESSED IN THE LAST 7 YEARS, OR BEEN A PARTY IN A LAWSUIT? | No | No |
| 3. IS YOUR INCOME LIKELY TO DECLINE IN THE NEXT TWO YEARS? | No | No |
| 4. ARE YOU A CO-MAKER, CO-SIGNER OR GUARANTOR ON ANY LOAN NOT LISTED ABOVE? FOR WHOM (Name of Others Obligated on Loan): TO WHOM (Name of Creditor): | No | No |

## STATE NOTICES

**OHIO RESIDENTS ONLY:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**WISCONSIN RESIDENTS:** Marital Status: ☐ Married ☐ Unmarried ☐ Legally Separated

If married: the name of my spouse is ______________________

Spouse's SSN: ______________ ☐ Spouse's Address (if different) ______________________

**Notice:** No provision of any marital property agreement, unilateral statement under Section 766.59, or court decree under Section 766.70 will adversely affect the rights of the Credit Union unless the Credit Union is furnished a copy of the agreement, statement or decree, or has actual knowledge of its terms, before the credit is granted or the account is opened.

**MARRIED WISCONSIN RESIDENTS APPLYING FOR AN INDIVIDUAL ACCOUNT:** By signing here, I state that the credit being applied for, if granted, will be incurred in the interest of the marriage or family of the Borrower(s). X ______________________

## LOAN APPLICATION SIGNATURES

**PLEASE READ BEFORE SIGNING:**

All the information in this application is true. I understand that section 1014 Title 18 U.S. Code makes it a federal crime to knowingly make a false statement on this application. You have my permission to check it. You may retain this application even if not approved. I understand that you may receive information from others about my credit and you may answer questions and requests from others seeking credit or experience information about me or my accounts with you. If this application is approved, I agree to honor the provisions of the credit or loan agreement and security agreement covering my account or loan. (If this application is for two of us, this statement applies to both of us.)

**Credit Report Authorization.** By signing this Application, I authorize you to obtain my credit report for the purposes of evaluating this application and to obtain subsequent credit reports on an on-going basis in connection with this transaction, and for all other legitimate purposes, such as reviewing my accounts or taking collection action on the account.

***Vermont Residents:*** Applicant provided consent via phone ______________ (Credit Union initials)

IMPORTANT NOTICE ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for me: When I open an account, you will ask for my name, address, date of birth, and other information that will allow you to identify me. You may also ask to see my driver's license or other identifying information.

| SIGNATURE OF APPLICANT | DATE | SIGNATURE OF CO-APPLICANT | DATE |
|---|---|---|---|
| X [signature] | | X [signature] | |

HAVE YOU OMITTED ANYTHING? REMEMBER: INCOMPLETE APPLICATIONS CANNOT BE PROCESSED.

Monday, February 10, 2014

# Lending/Retail Breakdown

# Kelley Blue Book

**2/7-2/13**

2013 Chevrolet Cruze eco Sedan 4D.................................................... $15,022 / $17,572

**VIN: 1G1PJ5SB9D7240516**
**Stock #: 8555**

| | |
|---|---|
| 4-Cyl, Turbo, 1.4 Liter | Included |
| Manual, 6-Spd w/Triple OD | -575 / -765 |
| FWD | Included |

## *** Equipment ***

| | | | |
|---|---|---|---|
| Traction Control | Included | AM/FM Stereo | Included |
| StabiliTrak | Included | MP3 (Single Disc) | Included |
| ABS (4-Wheel) | Included | Premium Sound | 175 / 235 |
| Keyless Entry | Included | SiriusXM Satellite | Included |
| Air Conditioning | Included | Bluetooth Wireless | Included |
| Power Windows | Included | OnStar | Included |
| Power Door Locks | Included | Dual Air Bags | Included |
| Cruise Control | Included | Side Air Bags | Included |
| Power Steering | Included | F&R Head Curtain Air Bags | Included |
| Tilt & Telescoping Wheel | Included | Daytime Running Lights | Included |
| | | Rear Spoiler | 100 / 135 |
| | | Premium Wheels | 275 / 365 |

| | |
|---|---|
| Condition | Fair |
| Total Value without mileage | $14,997 / $17,542 |
| Mileage adjustment (10684) miles | $509 |

*** KBB Lending/Retail Value.................................................... $15,506 / $18,051

Kempton Chevrolet Buick - Adam Crohn

Kelley Blue Book publication for Arizona: 2/7-2/13

Values are subjective opinions. Kelley Blue Book and vAuto, Inc. assume no responsibility for errors or omissions.
© vAuto, Inc. 2014, all rights reserved.

ADOT **Motor Vehicle Division**

DEAL #: 35600
CUST #: 35023
384.46

# TITLE AND REGISTRATION APPLICATION

96-0236 R09/09 www.azdot.gov

☐ Title and Registration ☐ Title Only ☐ Duplicate ☐ Registration Only ☐ Dismantle ☐ Salvage ☐ Stolen

| Plate Number | Plate Credit No. | Credit Eff. Date | First Registered | Reg. Eff. Date | Reg. Expiration Date | Unit Number | Mobile Home W/L |
|---|---|---|---|---|---|---|---|
| | | | | | | | N/A |

| Vehicle Identification Number | Make | Body Style | Year | Model | List Price |
|---|---|---|---|---|---|
| 1G1PJ5SB9D7240516 | CHEVROLET | 4DR SDN EC | 2013 | CRUZE | $ 16533.00 |

| GVW | Fuel | Odometer Reading (no tenths) | Odometer Codes* | Vehicle Construction | Trailer Plate Size |
|---|---|---|---|---|---|
| | GAS | 10745 | ☐ A ☐ B ☐ C | ☐ Specially Constructed ☐ Reconstructed | ☐ Full Size ☐ Small |

| Lien Amount | Lien Date | ☐ Additional lien or lienholders (attach another application) |
|---|---|---|
| $ 18789.31 | 02/08/2014 | N/A |

| Lienholder Driver License or EIN* | Lienholder Name (if no lien, write NONE) | Legal Status |
|---|---|---|
| | ARIZONA STATE CREDIT UNION | ☐ Or ☐ And ☐ And/Or |

| Mailing Address | City | State | Zip |
|---|---|---|---|
| 2355 WEST PINNACLE PEAK RD | PHOENIX | AZ | 85027 |

| Owner Driver License or EIN* | Owner Name (first, middle, last, suffix) | | | |
|---|---|---|---|---|
| [redacted] | DANIEL J PENA | | | |
| **Date of Birth** | **MVD Tax Account Number (if applicable)** | **Legal Status* (if "Or", sign here) ▸** | | |
| [redacted] | | ☒ Or ☐ And ☐ And/Or | | |
| **Street Address** | | **City** | **State** | **Zip** / **County** |
| 2135 N SOCHI LANE<br>PO BOX 995 | | SAFFORD | AZ | 85548 |
| **Mailing Address (if different from above)** | | **City** | **State** | **Zip** / **County** |
| N/A | | N/A | N/A | N/A / N/A |

| Owner Driver License or EIN* | Owner Name (first, middle, last, suffix) | | | |
|---|---|---|---|---|
| [redacted] | TIFFANY D PENA | | | |
| **Date of Birth** | **MVD Tax Account Number (if applicable)** | **Legal Status* (if "Or", sign here) ▸** | | |
| [redacted] | N/A | ☒ Or ☐ And ☐ And/Or | | |
| **Street Address** | | **City** | **State** | **Zip** / **County** |
| 2135 N SOCHI LANE<br>PO BOX 995 | | SAFFORD | AZ | 85548 |
| **Mailing Address (if different from above)** | | **City** | **State** | **Zip** / **County** |
| N/A | | N/A | N/A | N/A / N/A |

| Owner Driver License or EIN* | Owner Name (first, middle, last, suffix) | ☐ Additional owners (attach another application) | | |
|---|---|---|---|---|
| N/A | N/A | | | |
| **Date of Birth** | **MVD Tax Account Number (if applicable)** | **Legal Status* (if "Or", sign here) ▸** | | |
| N/A | N/A | ☐ Or ☐ And ☐ And/Or | | |
| **Street Address** | | **City** | **State** | **Zip** / **County** |
| N/A | | N/A | N/A | N/A / N/A |
| **Mailing Address (if different from above)** | | **City** | **State** | **Zip** / **County** |
| N/A | | N/A | N/A | N/A / N/A |
| **Vehicle/Mobile Home Location** | | **City** | **State** | **Zip** / **County** |
| N/A | | N/A | N/A | N/A / N/A |

| Service Options* | Date Vehicle Acquired |
|---|---|
| N/A | 02/08/2014 |

☐ Vehicle will be rented without a driver (such as a rental car).

☐ I consent to the release of personal information contained in my driver license and vehicle record. I understand that this is not a one-time consent that applies only to a specific individual or organization, but is instead a general consent that applies to all requests from any and all individuals or organizations for any purpose, until revoked by me in writing. Consent for a vehicle record applies to all owners.'

☐ I certify that this vehicle, commonly referred to as a station wagon or referred to by the manufacturer's rating as a 3/4 ton or less pickup truck or 3/4 ton or less van, is not maintained and operated more than 1,000 hours in a vehicle registration year for the transportation of passengers or property in the furtherance of a commercial enterprise.

☐ I certify that this trailer or semitrailer with a declared gross weight of 10,000 lbs or less is not maintained and operated in the furtherance of a commercial enterprise.

I certify that the information above and any documentation which I submit in support of this application, is true and correct; that the vehicle is free from liens, except those indicated above and that I have read and understand the requirements of the legal status indicated above. I acknowledge that the odometer reading above is qualified by the seller and that it is not the responsibility of the Motor Vehicle Division to determine the accuracy of the odometer statement. I understand that vehicles registered for use in, or used to commute into, Air Quality Control Areas (including greater metro Phoenix and Tucson) may be subject to emission testing.

**All Owners Sign Here**

x x

| MVD Use | Cat | Canceled Plate Number/State/Agent | Current Title Number | State | Date Title Issued | * See Reverse |
|---|---|---|---|---|---|---|
| | | ☐ 1 ☐ 2 Plates | | | | |

| REG | EIF | TRN | AQF | PST | PEN | LOP | SNO | DOR | TTL |
|---|---|---|---|---|---|---|---|---|---|
| **UTX** | **SPL** | **VLT** | **CRF** | **WGT** | **MCF** | **PRC** | | **Total Fees** | |

1C ☐ 1B ☐ 1A ☐

ADOT
Motor Vehicle Division
96-0165 R09/13 www.azdot.gov

# SECURE ODOMETER DISCLOSURE

**Void If Altered Or Erased**

| Vehicle Identification Number | Year | Make | Body Style |
|---|---|---|---|
| 1G1PJ5SB9D7240516 | 2013 | CHEVROLET | 4DR SDN ECO |

| Buyer Name | Sale Date | Title Number |
|---|---|---|
| DANIEL J PENA | 02/08/2014 | |

Federal and State law require that the seller states the mileage in connection with the transfer of ownership. Failure to complete the odometer statement, or providing a false statement, may result in fines and/or imprisonment.

| Odometer Reading (no tenths) | |
|---|---|
| 10745 | XX☐ miles ☐ kilometers |

☐ Mileage in excess of the odometer mechanical limits.

☐ NOT Actual Mileage, WARNING – ODOMETER DISCREPANCY.

I certify to the best of my knowledge that the odometer reading is the actual mileage unless one of the boxes above is checked.

| Seller/Dealership Name (printed) | | | Dealer Number |
|---|---|---|---|
| KEMPTON CHEVROLET BUICK LTD. | | | L00001812 |
| **Street Address** | **City** | **State** | **Zip** |
| 715 5TH STREET | SAFFORD | AZ | 85546- |
| **Agent Name** | **Seller/Agent Signature** | | |
| ADAM S CROHN | [signature] | | |

I am aware of the above odometer certification made by the seller.

| Buyer Name (printed) | Buyer Signature |
|---|---|
| DANIEL J PENA | [signature] |

WITH TITLE

**KEMPTON CHEVROLET BUICK**
715 5th Street
SAFFORD, ARIZONA 86646
928-428-0252 1-800-458-4287

CHEVROLET BUICK

# VEHICLE PURCHASE ORDER

STOCK NO. 8555

PURCHASER'S NAME: DANIEL J PENA / TIFFANY D PENA

DATE 02/08/2014

E-MAIL

**PLEASE ENTER MY ORDER FOR ONE** ☐ NEW ☒ USED ☐ DEMO **AS FOLLOWS**

| MAKE | MODEL | COLOR | TYPE | YEAR |
|---|---|---|---|---|
| CHEVROLET | CRUZE | GRAY | 4DR SDN EC | 2013 |

| VEHICLE IDENTIFICATION NUMBER | MILEAGE | TO BE DELIVERED ON OR ABOUT |
|---|---|---|
| 1G1PJ5SB9D7240516 | 10745 | 02/08/2014 |

| | |
|---|---|
| PRICE OF VEHICLE | 16533.00 |
| | |
| | |
| | |
| GAP 599.00 | 599.00 |
| TOTAL | 17132.00 |
| TAX | 1173.85 |
| DEALER DOCUMENTARY FEE | 99.00 |
| | |
| LICENSE 372.46 TRANSFER N/A TITLE 4.00 REGISTRATION FEE 8.00 | 384.46 |
| **(1) TOTAL CASH SALE PRICE** | 18789.31 |
| DOWN PAYMENT: CASH DEPOSIT SUBMITTED WITH ORDER | N/A |
| ALLOWANCE FOR USED VEHICLE TRADE-IN | N/A |
| LESS BALANCE OWING TO - | N/A |
| | N/A |
| **(2) TOTAL DOWN PAYMENT** | N/A |
| **BALANCE DUE (1 less 2)** | 18789.31 |

| DESCRIPTION OF TRADE | VIN | | |
|---|---|---|---|
| YEAR | MAKE | MODEL | TYPE |
| MILEAGE | PLATE NO. | EXP. DATE | |

Purchaser intends to use the vehicle primarily for ☐ personal, family, or household purposes ("personal use") ☐ business, agricultural or other non-personal uses ("commercial use"). Purchaser agrees that this Order includes all of the terms and conditions on both the face and reverse side hereof, that this Order cancels and supersedes any prior agreement and as of the date hereof comprises the complete and exclusive statement of the terms of the agreement relating to the subject matters covered hereby. This Order is not binding until accepted by Seller and, if a time sale, (1) appropriate financing disclosures are made and (2) a retail installment sale contract and purchase money security agreement ("Contract") is executed. Until a time sale Order becomes binding, Purchaser may cancel it and recover any deposit made. The Contract and this Order shall be subject to cancellation by Seller unless and until approval of the Contract is given by a bank or finance company willing to purchase the Contract from Seller on terms acceptable to Seller.

Purchaser hereby grants Seller a Purchase Money Security Interest in the Vehicle, all accessions thereto and any proceeds of the Vehicle. If the Vehicle is purchased for commercial use, the security interest also covers all equipment, accessories and parts (other than accessions) added to the Vehicle. If the Vehicle is purchased for personal use, the security interest also covers equipment, accessories and parts (other than accessions) added to the Vehicle within ten (10) days of this Order. You also grant the Seller a security interest in the proceeds of any physical damages insurance policy on the Vehicle.

***LIMITATIONS/EXCLUSIONS OF PRODUCT WARRANTIES***

*(a) For "new" vehicles: (1) If the vehicle is purchased for personal use, Seller makes no implied warranty of merchantability or of fitness for any particular purpose unless Seller also gives Purchaser a written warranty, on its own behalf, with respect to the Vehicle, or, at the time of the sale or within 90 days thereafter, Seller enters into a service contract with Purchaser which applies to the vehicle. In that event, any implied warranties arising from the sale of the vehicle shall be limited to the duration of Seller's written warranty or service contract; (2) If the vehicle is purchased for commercial use, Seller makes no implied warranty of merchantability or of fitness for any particular purpose. The vehicle is sold to Purchaser AS IS, except for any express warranties made by Seller, on its own behalf, or by the manufacturer of the Vehicle or of any component parts. (3) In all cases, Seller shall not be liable for any consequential damages arising from any breach of any warranty, express or implied.*

**(b) For "used" vehicles:**

**(1) Used Car Implied Warranty of Merchantability:**

**THE SELLER HEREBY WARRANTS THAT THE VEHICLE WILL BE FIT FOR THE ORDINARY PURPOSES FOR WHICH THE VEHICLE IS USED FOR 15 DAYS OR 500 MILES AFTER DELIVERY, WHICHEVER IS EARLIER, EXCEPT WITH REGARD TO PARTICULAR DEFECTS DISCLOSED ON THE FIRST PAGE OF THIS AGREEMENT. YOU (THE PURCHASER) WILL HAVE TO PAY UP TO $25.00 FOR EACH OF THE FIRST TWO REPAIRS IF THE WARRANTY IS VIOLATED.**

**(2) Waiver of Used Car Implied Warranty of Merchantability:**

**ATTENTION PURCHASER: SIGN HERE ONLY IF THE DEALER TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM(S) AND THAT YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:**

**ATENCION COMPRADOR: FIRME AQUI SOLAMENTE SE EL VENDEDOR TO HADICHO QUE EL VEHÍCULO TIENE EL SIGUIENTE PROBLEMA(S) Y QUE USTED DE ACIERTO DE COMPRA EL VEHÍCULO BAJO ESTOS TÉRMINOS:**

1. ______________________ **Buyer/Comprador** ______________ **Date** ________
2. ______________________ **Buyer/Comprador** ______________ **Date** ________
3. ______________________

*(3) The vehicle is sold "AS IS - - NOT EXPRESSLY WARRANTED OR GUARANTEED" unless Seller gives Purchaser a [illegible] stating the terms of any warranty or service contract given by Seller on its own behalf. If the vehicle is purchased for personal use, Seller makes no implied warranty of fitness for any particular purpose, and the implied warranty of merchantability is limited to 15 days or 500 miles after delivery, whichever is earlier [illegible] set forth above, unless Seller also gives Purchaser a written warranty, on its own behalf, with respect to the Vehicle, or, at the time of the sale or within 90 days thereafter, Seller enters into a service contract with Purchaser which applies to the Vehicle. In that event, any implied warranties arising from the sale of the vehicle shall be limited to the duration of Seller's written warranty or service contract. If the vehicle is purchased for commercial use, Seller makes no implied warranty of [illegible] for any particular purpose, and the implied warranty of merchantability is limited to 15 days or 500 miles after delivery, whichever is earlier. In all cases, Seller shall not be liable for any consequential damages arising from any breach of any warranty, express or implied, except for a breach of the implied warranty of merchantability.*

**Purchaser, by execution of this Order, represents that Purchaser is of legal age or older and acknowledges that Purchaser has read its terms and conditions including such terms and conditions contained on the reverse side hereof and has received a true copy of this Order.**

**NOTICE: WHERE THE DEALER ARRANGES FINANCING, THE DEALER MAY RECEIVE A PORTION OF THE "FINANCE CHARGE" FROM THE LENDER.**

THE TRANSACTION WHICH IS THE SUBJECT OF THIS CONTRACT ☐ IS OR ☐ IS NOT SUBJECT TO A FEE [illegible] BY A BROKER FROM THE SELLING MOTOR VEHICLE DEALER. IF APPLICABLE, THE NAME OF THE BROKER IS:

Signed: ______________ PURCHASER

Signed: ______________ PURCHASER

ADAM S CROHN ______________ SALESPERSON

Approved ______________

THIS ORDER IS NOT VALID UNLESS SIGNED AND ACCEPTED BY SELLER

By ______________

Address: 2135 N SOCHI LANE PO BOX 995
SAFFORD AZ 85548

(HOME): 965-7249

Phone (Cell): ______________ (Bus): ______________

# CNA NATIONAL
WARRANTY CORPORATION

# Guaranteed Auto Protection GAP Advantage Program Debt Waiver Addendum
## ENROLLMENT

GAP NUMBER: GPR-21055413

**This Guaranteed Auto Protection (GAP) Debt Waiver Addendum ("Addendum") amends Your retail installment sales/loan/lease contract ("Finance Contract").**

| RETAIL INSTALLMENT SELLER ("Dealer/Creditor") | BUYER OR LESSEE ("You" or "Your") |
|---|---|
| | DANIEL J PENA |
| KEMPTON CHEVROLET BUICK LTD. | TIFFANY D PENA |
| PHONE NO. 928 428 - 0252 | PHONE NO. 965 - 7249 |
| MAILING ADDRESS 715 5TH STREET | MAILING ADDRESS 2135 N SOCHI LANE PO BOX 995 |
| CITY STATE ZIP SAFFORD AZ 85546- | CITY STATE ZIP SAFFORD AZ 85548 |

| FINANCIAL INSTITUTION ("Lender") | PHONE NO. |
|---|---|
| ARIZONA STATE CREDIT UNION | |
| MAILING ADDRESS 2355 WEST PINNACLE PEAK RD | CITY STATE ZIP PHOENIX AZ 85027 |

| AGREEMENT TYPE AND COVERAGE PERIOD | CONTRACT TERM* (MONTHS) | PURCHASE / LEASE | | GAP ISSUE DATE DAY/MONTH/YEAR | SALE MILEAGE | GAP ADDENDUM PURCHASE PRICE |
|---|---|---|---|---|---|---|
| | 84 | PURCHASE | XX | 02/08/2014 | 10745 | $ 599.00 |
| | | LEASE | | | | |

| COVERED VEHICLE DESCRIPTION | YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|---|
| | 2013 | CHEVROLET | CRUZE | 1 G 1 P J 5 S B 9 D 72 4 0 5 1 6 |

| VALUE OF COLLATERAL | MSRP/NADA VALUE RETAIL VALUE | MONTHLY PAYMENT | FINANCED AMOUNT OR LEASE NET CAPITALIZED COST |
|---|---|---|---|
| | $ 16533.00 | $ 269.54 | $ 18789.31 |
| | ALTERNATE FINANCING ☐ | RESIDUAL VALUE $ N/A | |

***Maximum Contract Term cannot exceed 84 months and value of collateral cannot exceed $100,000.**

By signing below, You acknowledge that You have read and understand the provisions contained in this Addendum including State Provisions on the back and that You are not relying on any other writings or any other representations or promises other than those within this Addendum. If any of the information shown in the registration section is in error, You must contact the GAP Program Administrator immediately. The GAP Program Administrator will make any appropriate changes by endorsement to this Addendum and will immediately forward a copy of the endorsement to You via first-class mail. In the event of a Total Loss, You are responsible for notifying Your Primary Automobile Insurance Company and the GAP Program Administrator. See "How to Submit a Claim" for additional information. By signing below, You accept this contract.

The information shown above is true to the best of our knowledge

| RETAIL INSTALLMENT SELLER | DATE | BUYER OR LESSEE | DATE |
|---|---|---|---|
| [signature] | 02/08/2014 | [signature] | 02/08/2014 |
| | | CO-BUYER / CO-LESSEE [signature] Tiffany Pena | DATE 02/08/2014 |

**ELIGIBILITY LIMITS:** You may purchase this Addendum only at the time the Finance Contract is executed. This Addendum may not be attached to a Finance Contract under which: (a) the financed amount or lease capitalized cost exceeds $100,000 or 150% of the Manufacturer's Suggested Retail Price ("MSRP") for a new vehicle or 150% of the National Automobile Dealers Association ("NADA") Official Used Car Guide retail value for a used vehicle, (b) the purchase price or lease capitalized cost or the MSRP for a new vehicle or the NADA retail value for a used vehicle exceeds $100,000, or (c) the Finance Contract term exceeds 84 months.

**ELECTION: You have elected to purchase this Addendum for a separately stated charge. You may, at Your option, purchase GAP protection from the Lender or another source that is acceptable to the Lender. This Addendum is not automobile insurance, nor does this Addendum fulfill any requirements of any financial responsibility laws. You understand that GAP benefits under this Addendum decrease over the term of the Finance Contract and that some provisions within this Addendum may restrict or limit these benefits.** You agree to maintain automobile physical damage and collision coverage through Your Primary Automobile Insurance Company for the full term of this Addendum, as required by the terms of the Finance Contract. **Your purchase of this Addendum is strictly voluntary and is not required for the buyer to obtain an extension of credit. Additionally, Your purchase of this Addendum will not be a factor in the credit approval process.**



6921 (02/13)
LZX 94239

LIENHOLDER

CUDL 3

# Credit Application Response

Kempton Chevrolet, Buick - 484091

| Application Status | | Seller Contact Information | |
|---|---|---|---|
| Application Number | [redacted] | Seller Contact | [redacted] |
| Status Date | 2/8/2014 12:06:41 PM PT | Phone Number | |
| Loan Type | Used Auto | Fax Number | |
| External Reference Number | 00000243718 | | |

## Approve

| Lender Information | | | |
|---|---|---|---|
| Credit Union | Arizona State Credit Union | Credit Union Fax | [redacted] |
| Primary Contact | [redacted] | Primary Phone | |
| Secondary Contact | | Secondary Phone | |

| Applicant Information | | | |
|---|---|---|---|
| Applicant | **pena, daniel** | Co-Applicant | **pena, tiffany** |

| Financing Details | | | |
|---|---|---|---|
| Approved Amount | **$18,824.00** | Requested Amount | $18,824.00 |
| Rate | 5.4500% | Term | 7 yrs., 0 mos. (84 mos.) |
| | | Tier | B |

**Stipulations**

- CU Use Only - Verify Citizenship

**Loan Policies & Conditions**

• Minimum Loan Amount = $3,500
• All Approvals are subject to final verification • No vehicles over 100,000 miles • Rate and LTV based on Experian Fair Isaac Score V2 only
• New members welcome - must qualify based upon field of membership eligibility - see Seller Forms for complete listing. No dealer "sponsorship" permitted for new members. CU Advantage Form Accepted for membership.
• First Time Borrower program - may require a co-borrower and money down.
• The MSRP value will be used for current model years and newer. All other model years are subject to Retail Blue Book Value.
• Term of loan must not exceed work visa / student visa expiration date.
• Max GAP is $800. Max Maintenance/Warranty $3,500.00 or 10% Wholesale value, whichever is greater (No Drivers Choice, Ownerguard or Great Lakes Warranty). Max advance with cancellable products not to exceed 135% LTV
• No reserve paid on amounts financed less than $10,000.00 • Trades with the CU will be net funded from the loan proceeds.
• The credit union does not finance special packages such as Roush, Saleen or lift kits. No additional value should be added to the MSRP/Invoice for these types of packages.
• We do not finance Salvage, Lemon Law, Gray Market or Commercial Vehicles.
• Charge Back for participation fees if the loan is paid off within 90 days • First Payment default buyback applies.
• The pre-approved rate for AZSTCU Members includes a .25% reduction for direct debit from a qualifying checking account. Members without a qualifying checking account should be priced .25% higher.

**Lien Holder Information**

Arizona State Credit Union
E00204278
2355 W Pinnacle Peak Road
Phoenix, AZ 85027

**Package Mailing Address**

Please mail package to:
2355 W Pinnacle Peak Rd
Phoenix, AZ 85027

**Application History**

| Status | Stage | Date/Time | Approved Amount | Rate | Term | Tier | User Phone # | User Name |
|---|---|---|---|---|---|---|---|---|
| | Enter App | 02/08/2014 11:33 AM PT | | | | | | |
| | App Submitted | 02/08/2014 11:57 AM PT | | | | | | |
| Refer | System Decision | 02/08/2014 11:58 AM PT | | | | B | [redacted] | [redacted] |
| Refer | Pending | 02/08/2014 11:58 AM PT | | | | B | | |
| Approve | Pending | 02/08/2014 12:09 PM PT | $18,824.00 | 5.45 % | 84 Months | B | | |
| Approve | Pending | 02/08/2014 12:09 PM PT | $18,824.00 | 5.45 % | 84 Months | B | | |

# AGREEMENT TO FURNISH INSURANCE POLICY

**(TO BE USED WITH SECURITY AGREEMENT ON SALE OF VEHICLE)**

Date 02/08/2014

TO SELLER KEMPTON CHEVROLET BUICK LTD.
715 5TH STREET SAFFORD AZ 85546-

The undersigned Buyer(s) agree(s) to furnish his/their own Insurance Policy, covering a vehicle which is the subject of a Security Agreement (the "Security Agreement") dated this 8th day of FEBRUARY, YR 2014

The vehicle referred to herein is described as follows:

| Year | Make | Model | Body Type | Vehicle Identification No. |
| --- | --- | --- | --- | --- |
| 2013 | CHEVROLET | CRUZE | 4DR SDN ECO | 1G1PJ5SB9D7240516 |

Such Insurance Policy must be delivered to the Seller within 1 days from the date of this Agreement. The following is not an acceptable policy: Maintenance or repair contracts, One Month Policies or Insurance Certificates that make reference to a "Master Insurance Agreement." If Seller does not receive such Policy by the time stated, Seller may (but is not required to) procure insurance of the kind and type agreed to be furnished under the terms of the Security Agreement. Such insurance may cover only Seller's interest in the vehicle.

Ins.Co. STATE FARM Agent ANN JOHNSON (928)428-3443 AGENT'S PHONE NUMBER

404 W MAIN SAFFORD AZ 85546
ADDRESS OF AGENT - STREET CITY STATE ZIP

Policy No. ____ Exp. Date ____ Deductible Collision

☐ Fire & Theft - ☐ Additional Coverage - ☐ $ ____ Deductible Comprehensive - ☐ $ ____

In the event Buyer(s) fail(s) to furnish a valid insurance policy, or written evidence of insurance, of the type required under the Security Agreement, Buyer(s) hereby agree(s) to pay to Seller or its assignees any earned premium for any policy they may have to place for the above described vehicle in accordance with repayment procedures set forth in the Security Agreement.

Buyer(s) further agree(s) to assume forthwith any and all responsibility for damage to the vehicle or resulting from the use, maintenance or operation of the vehicle, and agree to hold Seller free of any loss, claim, or liability resulting from any damage to the vehicle or from the vehicle's use, maintenance or operation.

Loss Payee ARIZONA STATE CREDIT UNION

Loss Payee's Address 2355 WEST PINNACLE PEAK RD PHOENIX AZ 85027

NOTICE TO BUYER: This Agreement does not authorize the ordering of Public Liability or Property Damage Insurance. Any insurance ordered by the Seller or Seller's Assignee will cover loss of or damage to the vehicle only and will not include Public Liability or Property Damage Insurance.

BUYER'S NAME (Printed) DANIEL J PENA
TIFFANY D PENA

ADDRESS 2135 N SOCHI LANE
SAFFORD AZ 85548

HOME PHONE 965-7249 BUSINESS PHONE

X: [signature] BUYER'S SIGNATURE

X: [signature] CO-BUYER'S SIGNATURE

LAW FORM NO. 228RS-U REV 3/13 ©2013 The Reynolds and Reynolds Company TO ORDER: www.reysource.com; 1-800-344-0996; fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.